207 So.2d 674 (1968)
Eldred L. TUGGLE and Catherine Tuggle, His Wife, Petitioners,
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY, a Foreign Corporation, Respondent.
No. 35435.
Supreme Court of Florida.
January 31, 1968.
Rehearing Denied March 27, 1968.
Alfred D. Bieley and Thomas A. Horkan, Jr., Miami, for petitioners.
Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell and Paul A. Carlson, Miami, for respondent.
DREW, Justice.
Petitioner in this case controverts a decision of the District Court of Appeal, Third District, 185 So.2d 487. The appellate court held that an automobile insurance policy issued by respondent, providing for uninsured motorist coverage to be subject to set-off for "separately contracted for medical payments coverage" also provided by respondent, did not violate the minimum coverage prescription of F.S. Sec. 627.0851, F.S.A.[1]
*675 Certiorari has been granted on the basis of conflict with the decision of this Court in Sellers v. United States F. & G. Co.,[2] that the statute "does not permit `other insurance' clauses in the policy which are contrary to the statutorily limited amounts of coverage."[3] While the opinion in Sellers expressly excludes any intent that a claimant might pyramid coverages to obtain double recovery, or more than actual damages, that decision and others recently rendered clearly hold the statute to be designed to make each policy providing uninsured motorist coverage enforceable to the full statutory minimum to exactly the same extent that a policyholder would be legally entitled to recover damages from the third party tortfeasor.[4]
The decision in this case (Tuggle) has been previously considered briefly by this Court, in connection with an order dismissing a petition for certiorari here on conflict, Standard Accident Insurance Co. v. Gavin.[5] The writ in that case was properly discharged for lack of direct conflict between the cases, because of factual variance. Determination of the merits of the decision now presented, however, was not essential to the jurisdictional disposition, and we find that the opinion erroneously included the Tuggle decision in its pronouncement that "the legal conclusions in each decision * * * are consonant with statutory requirements."
In view of the fact that the two classes of coverage involved in the policy under consideration were contracted separately, with independent premiums, we are unable to distinguish this situation from that in Sellers, relating to multiple carriers. Nor does there appear to be any basis for treating the set-off provision as amounting only to a contractual reduction of medical benefits, contrary to the actual language of the policy stating in the provision for uninsured motorist coverage that the company shall not be obligated to pay any part of such liability which represents expense "payable" by the insurer under its medical benefits coverage. The clause on its face is one to decrease uninsured motorist coverage beneath the statutory minimum,[6] and one which means that under certain conditions (medical benefits in excess of $10,000) there will be no uninsured motorist coverage whatever.
*676 We conclude again that the requirement, in a policy of this nature, of "a showing of unreimbursed loss rather than legal damages within the minimum amount, is * * * in conflict with both express and implied requirements of the law."[7] Nor does respondent's right of subrogation under the statute, F.S. Sec. 627.0851(4), F.S.A., as construed in Sellers, supra, support the claim of set-off in the circumstances of this case.
The decision of the appellate court herein is therefore quashed and the cause remanded for disposition in accordance with this opinion, with directions that attorney's fees be awarded in accordance with petitioners' contentions on this point.
ROBERTS, THORNAL and ERVIN, JJ., concur.
BARNS, J. (Retired), dissents with opinion.
CALDWELL, C.J., dissents and agrees with BARNS, J. (Retired).
BARNS, PAUL D., Justice (Retired), (dissenting).
The question presented for review on certiorari of Tuggle v. Government Employees Insurance Company (Fla.App. 3rd District) 185 So.2d 487, is:
DOES THE LAW REQUIRE AN INSURER TO INDEMNIFY THE INSURED TWICE FOR THE SAME MEDICAL EXPENSES, WHEN THE INSURER AND THE INSURED HAVE CONTRACTED TO PAY BUT ONCE?
The trial judge and the district court held that the insurer was not required to discharge the same indemnity twice.
(We are not here involved with the "collateral source doctrine" which denied mitigation of damages because of recovery for the same medical expenses from a source wholly independent of the subject contract as in the cases of Standard Accident Ins. Co. v. Gavin, Fla.App., 184 So.2d 229; Fla., 196 So.2d 440; Southeast Title & Ins. Co. v. Austin, Fla., 202 So.2d 179.)
The plaintiffs' claim is based on a contract of indemnity for medical expenses because of bodily injury (1) caused by "accident" while occupying a specified Chrysler automobile; and (2) medical expenses by reason of bodily injury when "recoverable as damages from owners or operators of uninsured motor vehicles". The final decree of the trial judge provided that the insurer is "entitled to set-off medical payments" against any award against the insurer based on its liability under a claim to indemnity for same medical expenses incurred for bodily injury by the uninsured motorist. Double indemnity was disallowed.

INDEMNITY AGAINST MEDICAL EXPENSES CAUSED BY AUTOMOBILE ACCIDENT
The appellee-insurer promised to indemnify to the extent of $1,000.00 not only the named insured, but each relative and any other person who sustains bodily injury caused by "accident" while occupying the "owned automobile" while being used by the named insured, by any resident of the same household or by any other person with the permission of the named insured. This coverage likewise extends to bodily injury expenses resulting from the operation or occupancy by the named insured or operation on his behalf of a "non-owned automobile", as follows:
"PART II  EXPENSES FOR MEDICAL SERVICES

"Coverage C-Medical Payments: To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, X-ray and *677 dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services.

Division 1. To or for the named insured and each relative who sustains bodily injury, sickness or disease, including death resulting therefrom, hereinafter called `bodily injury', caused by accident, (a) while occupying the owned automobile, (b) while occupying a non-owned automobile, but only if such person has, or reasonably believes he has, the permission of the owner to use the automobile and the use is within the scope of such permission, or (c) through being struck by an automobile or by a trailer of any type;

Division 2. To or for any other person who sustains bodily injury, caused by accident, while occupying
(a) the owned automobile, while being used by the named insured, by any resident of the same household or by any other person with the permission of the named insured; or
(b) a non-owned automobile, if the bodily injury results from (1) its operation or occupancy by the named insured or its operation on his behalf by his private chauffeur or domestic servant, or (2) its operation or occupancy by a relative, provided it is a private passenger automobile or trailer,
but only if such operator or occupant has, or reasonably believes he has, the permission of the owner to use the automobile and the use is within the scope of such permission.

Definitions: The definitions under Part I apply to Part II, and under Part II:

`occupying' means in or upon or entering into or alighting from;

`an automobile' includes a trailer of of any type.
"* * *

"Limit of Liability: The limit of liability for medical payments stated in the declarations as applicable to `each person' is the limit of the company's liability for all expenses incurred by or on behalf of each person who sustains bodily injury as the result of any one accident."
INDEMNITY AGAINST TORTS BY UNINSURED MOTORIST
By another clause of the contract, the insurer promised to indemnify the insured for losses because of "bodily injury" which the insured "shall be legally entitled to recover as damages * * * caused by accident and arising out of the ownership, maintenance or use of an uninsured automobile". The clause states:
"PART IV  PROTECTION AGAINST UNINSURED MOTORISTS
"Coverage J-Uninsured Motorists (Damages for Bodily Injury)
"To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury", sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile,; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.
"* * *

"Definitions: The definitions under Part I, except the definition of `insured', apply to Part IV, and under Part IV:

"`Insured' means:
"(a) the named insured and any relative;

*678 "(b) any other person while occupying an insured automobile; and
"(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this Part applies sustained by an insured under (a) or (b) above.
"The insurance afforded under Part IV applies separately to each insured, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

"`Insured automobile' means:
"(a) an automobile described in the policy.
"(b) a private passenger, farm or utility automobile ownership of which is acquired by the named insured during the policy period, provided
(1) It replaces an insured automobile as defined in (a) above, or
(2) The company insures under this coverage all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company during the policy period or within 30 days after the date of such acquisition of his election to make the liability and uninsured motorist coverages under this and no other policy issued by the company applicable to such automobile.
(c) a temporary substitute automobile for an insured automobile as defined in (a) or (b) above, and
(d) a non-owned automobile while being operated by the named insured, and the term `insured automobile' includes a trailer while being used with an automobile described in (a), (b), (c) or (d) above,
"* * *

"`uninsured automobile' includes a trailer of any type and means:
"(a) an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility laws of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or
"(b) a hit-and-run automobile."
The foregoing clause, like the medical expense clause, covers the named insured and any relative of the named insured "who is a resident of the same household" (see definitions) when not an occupant of the named automobile as well as when an occupant. Both clauses cover occupants of the named automobile, a substituted automobile or a borrowed automobile.

CONTRACT CLAUSE AGAINST DOUBLE INDEMNITY
The contract further provides that the insurer shall not be obligated under the "uninsured motorist" clause to pay the second time the same medical expenses previously paid pursuant to the medical expense clause first above quoted, which clause states:
"(d) The company shall not be obligated to pay under this Coverage that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured automobile which represents expenses for medical services paid or payable under Part II."

*679 UNINSURED MOTORIST COVERAGE  NOT COMPULSORY
Statutory Regulation. The law requires that unless rejected by the insured, any company indemnifying the insured against liability arising out of the ownership, maintenance, or use of an automobile to include coverage of the insured against "bodily injury" by reason of actionable negligence of an uninsured motorist as follows:
"627.0851 Automobile liability insurance; uninsured vehicle coverage; insolvent insurer protection. 
"(1) No automobile liability insurance, covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than limits described in § 324.021(7), under provisions filed with and approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage * * *" (emphasis added).
The above-quoted statute specified that the amount of coverage shall be "in not less than limits described in § 324.021(7)", F.S.A. which statute prescribes the limits shall be "in the amount of ten thousand dollars because of bodily injury to or death of one person in any one accident and subject to said limits for one person, in the amount of twenty thousand dollars because of bodily injury to or death of two or more persons in any one accident".
It clearly appears that the subject indemnity insurance coverage is not only comprehensive of the statutory prescription but exceeds the statutory exactions. The policy provisions were doubtless worked out between the Insurance Commissioner and the insurance industry pursuant to the provision of the uninsured motorist statute, § 627.0851, F.S.A., supra, which provides that the coverage shall be "under provisions filed with and approved by the insurance commissioner." This provision of the law gives the Commissioner authority to approve such provisions as will aid in effectuating the statutory intent and purpose and public welfare, when not in conflict with the law, and consistent with the public policy. The provisions of the policy approved by the Commissioner of Insurance are consistent with public policy since it is not the public law to require two payments of the same obligation when only one is contracted to be paid.
It is clear that the legislature considered that the protection against loss occasioned by an uninsured motorist requirement would be issued in connection with other insurance and the intent permits the Commissioner to take into consideration the other insurance provisions in approving the terms of any proposed form as would be fair and just to the insurer and the insured. For the Commissioner to have required the policy to provide for double indemnity from the insured for the same loss would have been unequitable and would have exceeded the intent of the law and would have required the insured to pay a larger premium because of the increased risk to the insurer. Such an exaction by the Commissioner would have been conducive to moving the insured to reject the uninsured motorist insurance as the statute permits, to the detriment of the public welfare. It would have frustrated rather than advanced coverage against torts by uninsured motorists.
The decision under review adhered to the principle that double indemnity was not required as stated in that court's decision of Rosen v. Fireman's Fund Insurance Co., Fla.App., 1966, 189 So.2d 395. That decision departed from its holdings in Sims v. *680 National Casualty Company, Fla.App., 1965, 171 So.2d 399, and Hack v. Great American Insurance Company, Fla.App., 1965, 175 So.2d 594, and held when a person who has been injured on the insured's premises and has been paid his medical expenses under a medical payment liability provision of a policy could not recover for the same medical expenses again under a medical payment provision of the same policy. After reviewing the holdings in Sims case and the Hack case, supra, the court adopted with approval Gunter v. Lord, 242 La. 943, 140 So.2d 11 (1962).
The holding in the Gunter case, supra, is well summarized by the Annotation in 11 A.L.R.3rd (text) 1119, as follows:
"It was held in Gunter v. Lord (1962) 242 La. 943, 140 So.2d 11, that injured guest passengers who had received compensation for their medical expenses under the medical payments provision of their host's automobile policy were not entitled to an award of the same expenses in an action brought directly against the insurer under the liability clauses. The court said that the law did not allow an injured person to enrich himself by recovering again from a defendant an amount which has already been paid to him by the same defendant. Alluding to a provision in the policy that medical payment `shall reduce the amount payable hereunder for such injury,' the court held it clear that it was not contemplated that an injured person could collect his medical expenses twice. Instead, said the court, it was clearly intended that medical payments would be made, regardless of negligence, but in the event of tortious conduct by the insured, such payments would satisfy that portion of the damages. The injured persons argued, however, that they had claims against two separate insurance agreements for which separate premiums were paid  a tort claim based on the liability features of the policy, and a claim sounding in contract based on the medical payments feature providing coverage regardless of fault. The court rejected this contention, saying that, as between the insured and the insurer, the one claim is no less a contractual obligation than the other, since both are based solely on contract."

COLLATERAL SOURCE
An indemnitor, like a wrongdoer, is not entitled to mitigate his liability because the indemnitee has received or will receive compensation or indemnity from a collateral source, unconnected with and independent of him. However, the doctrine permits a wrongdoer to obtain the advantage of payments made by him or from a fund created by him; in such case the payments come from him and not from a collateral source, as when he purchases insurance and thereby creats a fund which insurance is the sole cause for the existence of the fund. Gunter v. Lord, supra; 22 Am.Jur.2d, Damages, § 206. As stated in 25 C.J.S. Damages § 99(1):
"A wrongdoer is not entitled to have the damages to which he is liable reduced by proving that plaintiff has received or will receive compensation or indemnity for the loss from a collateral source, wholly independent of him."
Although not expressed in such terms, the foregoing doctrine was adhered to or followed in Standard Accident Insurance Co. v. Gavin, Fla.App., 184 So.2d 229; Fla., 196 So.2d 440; Southeast Title & Insurance Co. v. Austin, Fla., 202 So.2d 179. Parker v. Wideman, 5th Cir., 380 F.2d 433 (1967) held that compensation for bodily injury paid to plaintiff pursuant to Federal Employees' Compensation Act (a collateral source) may not be used to mitigate damages recoverable against the tort-feasor under Florida law:
"The difficulty with the appellee's approach is that Florida recognizes the `collateral source rule' which permits an injured party to recover expenses against the tortfeasor incurred as a result of the tortfeasor's negligence even though the *681 injured party is compensated for those expenses by a collateral source. See, e.g. Paradis v. Thomas, 150 So.2d 457 (Fla.App.2d 1963). The appellee seeks to avoid the effect of the rule by arguing that it only precludes the defendant from introducing evidence of compensation from a collateral source, and that by introducing the evidence himself, the appellant waived the rule. Thus, the appellee continues, the jury was entitled to mitigate the damages by the monies received from a collateral source, as would be the case in those states which do not recognize the `collateral source' rule. We can not agree.
"The appellee's position would render the `collateral source' rule a mere rule of evidence which is waivable by the injured party. But the fact of the matter is that under Florida law the rule is a substantive rule of law which applies whether or not evidence of collateral compensation is introduced. See Finley P. Smith, Inc. v. Schectman, 132 So.2d 460 (Fla.App.2d 1961); Annot., 68 A.L.R. 2d 876 (1959); Restatement of Torts, § 920, comment e, at 620."
The case at Bar does not involve the collateral source doctrine, which rule gives the insured the benefit of the "wind fall," and not the insurer.
The district court in this case, and the district court in Damsel v. State Farm Mutual Automobile Insurance Co., Fla.App., 186 So.2d 825, construed the indemnity insurance as written and approved and did not require double indemnity which holdings are approved.
State Farm Mutual Automobile Insurance Company v. Carrico, Fla.App., 200 So.2d 265, and Phoenix Insurance Co. v. Kincaid, Fla.App., 199 So.2d 770, are in conflict with this holding and, to that extent, are disapproved.
To allow a set-off (or credit) to the indemnity insurer for money paid by it to the insured under the accidental injury clause (where wrongdoing is not essential), against a claim for indemnity against loss occasioned by the liability of an uninsured motorist, does not have the effect of "no uninsured motorist coverage" (as stated by Mr. Justice Drew), but only provides that the insurer shall not be obligated to indemnify the insured two times for the same loss.
Sellers v. United States Fidelity & Guaranty Co., Fla., 185 So.2d 689 (relied on by the controlling opinion), involved the collateral source doctrine which doctrine is not germane to this review; here there is no collateral source or "other similar insurance available" as per clause "5" (quoted, Fla. App., 179 So.2d 608, p. 609). Sellers adhered to the doctrine and held: An automobile insurance carrier indemnifying against injury by an uninsured motorist may not escape liability on the ground that the insured has similar insurance available to him; (nothing else was involved).
I would affirm.
CALDWELL, C.J., concurs.
NOTES
[1] Automobile liability insurance; uninsured vehicle coverage; insolvent insurer protection. 
"(1) No automobile liability insurance, covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than limits described in § 324.021(7), under provisions filed with and approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; * * *."
"324.021 Definitions; minimum insurance required.  The following words and phrases when used in this chapter shall, for the purpose of this chapter, have the meanings respectively ascribed to them in this section, except in those instances where the context clearly indicates a different meaning. * * *
"(7) PROOF OF FINANCIAL RESPONSIBILITY.' That proof of ability to respond in damages for liability, on account of accidents arising out of the use of a motor vehicle, in the amount of Ten Thousand dollars because of bodily injury to or death of one person in any one accident and subject to said limits for one person, in the amount of twenty thousand dollars because of the bodily injury to or death of two or more persons in any one accident, and in the amount of five thousand dollars because of injury to or destruction of property of others in any one accident."
[2] Fla. 1966, 185 So.2d 689. (Certiorari was denied in a second appearance of this case here but on a point unrelated to that now presented. See United States F. & G. Co. v. Sellers, Fla., 204 So.2d 211, certiorari denied September 18, 1967.)
[3] Ibid. 692.
[4] Southeast Title and Insurance Co. v. Austin, Fla. 1967, 202 So.2d 179.
[5] Fla. 1967, 196 So.2d 440.
[6] Accord, the Phoenix Ins. Co. v. Kincaid et ux., Fla.App., 1st Dist., June 13, 1967, 199 So.2d 770; State Farm Mutual Automobile Insurance Company v. Carrico, Fla.App.4th 1967, 200 So.2d 265.
[7] Note 4, supra, 202 So.2d 179, at pp. 180-181.