475 P.2d 264

Reggie BACCHUS and Helen Bacchus, husband and wife, Appellants,

v.

FARMERS INSURANCE GROUP EXCHANGE, Appellee.

No. 10052–PR.

Supreme Court of Arizona, In Banc.

Oct. 8, 1970.

Russo, Cox & Dickerson, by Vernon F. Dickerson, Tucson, for appellants.

Chandler, Tullar, Udall & Richmond, by D. B. Udall, Tucson, for appellee.

American Trial Lawyers Assn., Arizona Chapter, by William B. Revis, Langerman, Begam & Lewis, Phoenix, for amicus curiae.

McFARLAND, Justice.

The appellants, Reggie and Helen Bacchus (appellants) suffered severe injuries in an automobile accident on April 7, 1967. At that time they were covered by an insurance policy issued by the appellee, Farmers Insurance Group Exchange (Farmers),

which policy[1] included Uninsured Motorist Coverage as required by § 20–259.01 A.R.S. in the minimum amounts of $10,000 per person and $20,000 per occurrence. The other motorist involved in the accident was uninsured and, for the purposes of this appeal, there is no question concerning his sole liability for the accident nor of the injuries to the appellants. Apparently the appellants and Farmers could not agree on the amount that should be awarded in recompense for their damages and the matter was submitted to arbitration in accord with Farmers' policy provision.

The arbitrator, Edward I. Kennedy, a member of the American Arbitration Association, held a hearing and as a result awarded the sum of $8,200.00 to Reggie T. Bacchus and $10,000.00 to Helen V. Bacchus. Again, there is no complaint by Farmers as to the reasonableness of these amounts.

However, the arbitrator excluded from these awarded amounts any reimbursement to Farmers in the sum of $2,339.28, which was paid by Farmers under other provisions of the policy; that of Medical Payments, which are contained in a separate section of the policy, require a separate premium and are referred to by Farmers as "advancements". Farmers paid the award determined by the arbitrator but withheld the $2,339.28 in contravention of the arbitrator's decision. Appellants then filed suit in the superior court which en-

tered judgment on stipulated facts in favor of Farmers on the basis that the insurer, Farmers, "did not intend to submit to the arbitrator the issue of interpretation of the policy" as it relates to the refund of payments made under the Medical Payment coverage, and deductible from the payments under the Uninsured Motorist provision. The judgment was affirmed by the Arizona Court of Appeals, Division Two, 12 Ariz.App. 1, 467 P.2d 76 primarily on the grounds that the issue was not submitted to the arbitrator and secondarily that the medical payment setoff is valid under the case of Caballero v. Farmers Insurance Group, 10 Ariz.App. 61, 455 P.2d 1011. Because of the uncertainty in this area which has resulted from this and other decisions in the Court of Appeals, we granted the petitions for review in this case and in two related cases, Porter v. Empire Fire and Marine Insurance Company, 106 Ariz. 274, 475 P.2d 258, and Transportation Insurance Company v. Wade, 106 Ariz. 269, 475 P.2d 253.

Reduced to its basics, the only question here is can the insurer, Farmers, deduct the payments it has made to its insured, under the Medical Payments Provision of the policy, from those payments it is obligated to pay under the separate policy provision for Uninsured Motorist Coverage? Obviously under the contract of insurance it can, because the policy is clear and unambiguous on its face that medi-

---

1. § 20.259.01. "Coverage to include protection from operators of uninsured motor vehicles; right of rejection; supplemental or renewal policy

On and after January 1, 1966, no automobile liability or motor vehicle liability policy insured against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle, shall be delivered or issued for delivery in this state, with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in § 28–1142, under provisions filed with and approved

by the insurance director, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. This coverage shall at the time the policy is issued be called to the attention of the named insured who shall have the right to reject such coverage. Unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer." Added Laws 1965, Ch. 34, § 1.

cal payments are "advancements" when other insurance coverage is available and must be repaid by the insured in the form of a setoff against other insurance available under another provision of the same policy. Contractually there can be no argument that the appellants would have to reimburse Farmers for the advancements made under the Medical Payment coverage.

Of course, it is rather difficult to understand why an insured should be obliged to repay the proceeds from his medical payment coverage from other policy proceeds for which separate premiums are paid, and to require repayment or setoff as "advancements" seems to give such payments the nature of a loan rather than insurance. In Harleysville Mutual Insurance Company v. Lea, 2 Ariz.App. 538, 410 P.2d 495, the Court of Appeals seemingly disapproved of reimbursement albeit on different grounds. However, in Caballero v. Farmers Insurance Group, supra, Judge Malloy expressly approved such a practice on the grounds that medical payments is a voluntary coverage and the setoff was merely a question of contract between the insured and the insurer.

The Court of Appeals' affirmance of the judgment in the instant case rested squarely on the Caballero decision. But neither Caballero nor Lea, supra, involved an offset against Uninsured Motorist coverage, which coverage has been made mandatory by the Legislature and not merely a matter of grace on the part of the insurers. Of course, the insured can reject it in writing but the insurer must make it available. In fact the opinion in Caballero carefully noted this distinction:

"* * * No Arizona statute requires the issuance of separate medical expenses insurance, in any amount. The coverage is voluntary, and customarily, as here, provides for the payment of benefits without regard to whose negligence caused the injuries. *While offsets attempting to reduce mandatory coverages will not be permitted,* there is nothing to prevent the insurer and a person desiring to have medical expenses insurance from employing any provisions with respect to the payment or nonpayment of these benefits which they choose." (Emphasis added).

Permitting offsets of any type would allow insurers, by contract, to alter the provisions of the statute and to escape all or part of the liability which the Legislature intended they should provide. The medical payment coverage part of the policy is independent of the uninsured motorist coverage and should be treated the same as if it were carried with a different company. In Stephens v. Allied Mutual Insurance Company, 182 Neb. 562, 156 N.W.2d 133, the Nebraska Supreme Court considered the ramifications of this problem (the Arizona and Nebraska uninsured motorist statutes are similar):

"The two coverages (medical payment and uninsured motorist) are separate and independent contractual provisions in the policy for which a separate premium is charged and collected. On its face, this provision limits the coverage by providing that the company 'shall not be obligated to pay under this coverage * * *'. By its terms, the liability is limited to a 'portion of the damages' recoverable against the tort-feasor, and, in effect, carves out a restricted cause of action against the substitute carrier. But it is argued that the setoff in medical payments which reduces the coverage is supplied by the insurer under this separately contracted for medical payment coverage. Nevertheless, the provision either limits the substituted liability coverage or the separately contracted and charged for liability under the medical payment coverage and this is accomplished by transporting the medical payment coverage into the uninsured motorist coverage by way of limitation. The argument as to the effect of this provision, as distinguished from its basic nature, becomes dialectically complex. If the provision does not limit coverage, as the insurer contends, we fail to see

its purpose. Surely its object is not to give additional coverage to the insured. Conversely, if its purpose is to alter or change the company liability for the separately charged premium for medical payments, it would have to be struck down as an alteration of the separately contracted for contractual risk assumed by the insurer under the terms of the medical payment coverage.

"The complex, if not devious, ramifications of the application of the language of this clause can be quite simply illustrated. If the plaintiff in this case had contracted for medical expense coverage in the sum of $10,000 and had suffered medical expenses in excess of this amount, the effect of the setoff clause herein involved would be to completely eliminate the uninsured motorist coverage. By its terms this provision is not in the nature of subrogation but a limitation of liability. It can be contended that not only would the insurer pay nothing under the statutory coverage, but under its policy subrogation rights it would be entitled, to the extent of its medical expense payments, to any proceeds recovered from the uninsured tortfeasor motorist. It may also be contended that if it be true that this setoff provision does not reduce the company's liability on the uninsured motorist coverage, then payment of part or all of the insurer's liability under its medical expense coverage would not have the result of reducing the amount of the insurer's claim against amounts recovered from the uninsured tort-feasor. We refuse to be drawn into this dialectical quagmire. The separately contracted for and paid for uninsured motorist coverage required under the statutorily declared public policy purpose of the statute, may not be restricted or inhibited by the effect or the risk of the effect of the application of this provision which on its face is a limitation of liability."

Id. at 139. See also, Booth v. Seaboard Fire & Marine Insurance Company, 285 F.Supp. 920 (D.C.Neb.); Tuggle v. Government Employees Insurance Co., (Fla.) 207 So.2d 674; Widiss, A Guide to Uninsured Motorist Insurance (W. H. Anderson Co.). In the Nebraska case the court reasoned that the "insured is entitled to recover the same amount he would have recovered if the offending motorist had maintained liability insurance."

We do not feel that this statement is entirely correct for in certain circumstances its strict application could work a hardship on the insured. By our statute, against financially irresponsible drivers a minimum coverage must be made available to insureds, not as a convenience but rather as a Legislative mandate and in amounts of dollars and cents which leave nothing to the imagination of drafters of the insurance policies—$10,000 per person and $20,000 per occurrence. The fact that the motorist sees fit to clothe himself with other insurance protection and pays a premium therefor—such as medical payments—cannot alter the mandatory safeguards that the Legislature considers necessary for the well being of the citizen-drivers of our state. More particularly, a policy provision which the insured considers to be additional protection and for which he pays a premium with such extra protection in mind cannot be transposed by the insurer into a reduction of the mandatory minimum coverage.

 It is our opinion that in enacting § 20–259.01 A.R.S. it was the intent of the Legislature that each insured who availed himself of uninsured motorist coverage would have available *not less than* $10,000 per person and $20,000 per occurrence. Any attempt, by contract or otherwise, to reduce any part of this amount is violative of the statute. The court in Stephens v. Allied Mutual Insurance Company, supra, expressed this concept as follows:

"The minimum coverage required by statute is $10,000 per person and $20,000 per accident. The uninsured motorist protection required to be offered by this

statute as between the insured and his insurer is in the nature of a substitute liability policy; and to permit a limitation of this coverage by a policy provision so that it may be reduced below that required by statute, would be void as being contrary to the statute and the declared public policy and purpose as embodied in the provisions of the law."

In view of the foregoing opinion it is unnecessary for us to consider the question as to whether or not the parties intended that the arbitrator render a decision on the medical payment setoff.

The decision of the Court of Appeals is vacated and the judgment of the Superior Court is reversed and the matter remanded for further proceeding not inconsistent with this decision.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and HAYS, JJ, concur.