MARTHA U. HEISS, Ex'x ET AL v. AETNA CASUALTY AND SURETY CO.

5-5533                          465 S. W. 2d 699

Opinion delivered April 19, 1971

*Richard H. Mays* and *Mahony & Yocum,* for appellants.

*Shackleford & Shackleford,* for appellee.

LYLE BROWN, Justice. Appellants are Martha U. Heiss, executrix of the estate of Henry A. Heiss, and Dorthea T. Hall, individually and as executrix of the estate of T. M. Hall. Appellee is the carrier of an automobile insurance policy containing uninsured motorist provisions and issued to T. M. Hall. The latter, accompanied by Henry A. Heiss and Dorthea T. Hall, collided with an uninsured motorist. Mr. Hall and Mr. Heiss received fatal injuries and Dorthea T. Hall was seriously injured. Another passenger in the Hall car, W. J. Robertson, received minor injuries for which he was satisfactorily compensated and he is not a party to the appeal. The two estates and Mrs. Hall were paid $2,000 each for medical which was the maximum under the medical coverage. Robertson was paid $565.20. Appellee then filed this suit in chancery court impleading the sum of $13,434.80. Appellee contended that it was entitled to deduct the medical payments from the $20,000 maximum contained in the uninsured motorist section of the policy. Whether that deduction, which was upheld by the chancery court, was proper is the issue on appeal.

Part II, Coverage C—Medical Payments—insured T. M. Hall and all occupants of his vehicle for medical expenses in a maximum amount of $2,000 for each person. For that coverage the insurer charged nine dollars. Part IV, Coverage G—Family Protection (Damages for Bodily Injury [uninsured motorist provisions]) carried a separate premium of $5.00 and contained this provision:

> To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death, resulting therefrom, hereinafter called "bodily injury," sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; . . .

It is undisputed (1) that all occupants of the Hall vehicle were insureds, (2) that the limits of the policy were $10,000 for each insured and $20,000 total for each accident, and (3) that all occupants of the Hall vehicle, except Robertson, suffered total damages far in excess of the maximums payable under the policy.

The uninsured motorist clause contained this limitation of liability:

> The Company shall not be obligated to pay under this coverage that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured automobile which represents expenses for medical services paid or payable under Part II.

Our uninsured motorist law is found in Ark. Stat. Ann. § 66-4003 (Repl. 1966):

> No automobile liability insurance, covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto, in not less than limits described in section 27 of Act 347 of 1953 [§ 75-1427], as amended, under provisions filed with and approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage.

Ark. Stat. Ann. § 75-1427 (Supp. 1969), provides:

> No policy or bond shall be effective under Section 26 [§ 75-1426] unless issued by an insurance com-

pany or surety company authorized to do business in this State, except as provided in subdivision b of this section, nor unless such policy or bond is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than $10,000 because of bodily injury to or death of one (1) person in any one (1) accident and subject to said limit for one (1) person, to a limit of not less than $20,000 because of bodily injury to or death of two (2) or more persons in any one (1) accident, and if the accident has resulted in injury to, or destruction of property, to a limit of not less than $5,000 because of injury to or destruction of property of others in any one (1) accident.

We take the position that the deduction for medical expenses recited in the uninsured motorist section is in derogation of the explicit requirement of our uninsured motorist statute and financial responsibility law set forth in § 66-4003 and § 75-1427, supra, which require limits of *"not less than"* $10,000 for injury to or death of one person and $20,000 for injury to or death of two or more persons. Although our court has not had occasion to pass on the question, it has been met squarely in other jurisdictions, as we shall now point out.

*Bacchus* v. *Farmers Insurance Group Exchange,* 475 Pac. 2d 264 (Ariz. 1970). The Arkansas and Arizona statutes on uninsured motorists are almost identical. In *Bacchus* the insurer reduced the amount paid under the uninsured motorist provision by the amount it had already paid under the medical payments clause. In condemning the procedure the court said:

> Permitting offsets of any type would allow insurers, by contract, to alter the provisions of the statute and to escape all or part of the liability, which the Legislature intended they should provide. The medical payment coverage part of the policy is independent of the uninsured motorist coverage and should be treated the same as if it were carried with a different company.

\* \* \*

By our statute against financially irresponsible drivers a minimum coverage must be made available to insureds, not as a convenience but rather as a Legislative mandate and in amounts of dollars and cents which leave nothing to the imagination of drafters of the insurance policies—$10,000 per person and $20,000 per occurrence. The fact that the motorist sees fit to clothe himself with other insurance protection and pays a premium therefor—such as medical payments—cannot alter the mandatory safeguards that the Legislature considers necessary for the well being of the citizen-drivers of our state. More particularly, a policy provision which the insured considers to be additional protection and for which he pays a premium with such extra protection in mind cannot be transposed by the insurer into a reduction of the mandatory minimum coverage.

*Stephens* v. *Allied Mutual Insurance Co.,* 156 N. W. 2d 133 (Nebr. 1968). Again the Nebraska statutes on uninsured motorists and financial responsibility are substantially the same as ours. In *Stephens* the court faced the same problem which is before us. In rejecting the insurer's attempt to use the medical payments as a setoff the court said:

The complex, if not devious, ramifications of the application of the language of this clause can be quite simply illustrated. If the plaintiff in this case had contracted for medical expense coverage in the sum of $10,000 and had suffered medical expenses in excess of this amount, the effect of the setoff clause herein involved would be to completely eliminate the uninsured motorist coverage. By its terms this provision is not in the nature of subrogation but a limitation of liability. It can be contended that not only would the insurer pay nothing under the statutory coverage, but under its policy subrogation rights it would be entitled, to the extent of its medical expense payments, to any proceeds recovered from the uninsured tort-feasor motorist.

\* \* \*

We therefore hold that a provision in an automobile liability policy that an insurer shall not be obligated to pay under the uninsured motorist coverage for that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured automobile which represents expenses for medical services paid or payable under the medical payments coverage of the policy is void and against public policy in that it reduces the minimum coverage of uninsured motorist protection prescribed and required by the law.

*Tuggle* v. *Government Employees Ins. Co.*, 207 So. 2d 674 (Fla. 1968). Again we have the same statutes as ours. Referring to the setoff clause in the uninsured motorist section, the court said: "The clause on its face is one to decrease uninsured motorist coverage beneath the statutory minimum, and one which means that under certain conditions (medical benefits in excess of $10,000) there will be no uninsured motorist coverage whatever."

*Robey* v. *Northwestern Security Ins. Co.*, 270 F. Supp. 466 (Ark. 1967), and *Boehler* v. *Insurance Company of North America*, 290 F. Supp. 867 (Ark. 1968), dealt with the setoff provision at hand. Those cases, decided without benefit of precedent from our court, held the setoff to be proper. Of course those decisions are persuasive but not binding on us. We think the more rational conclusion is that which we have reached and that it is in line with the trend of authorities and particularly in harmony with a number of decisions which have been announced since those two cases. With the exception of the two cited district court cases we have been cited to no precedent contrary to our holding, keeping in mind the particular facts, statutes, and contractual provisions in the case at bar. Appellee cites *MFA Mutual Ins. Co.* v. *Wallace*, 245 Ark. 230, 431 S. W. 2d 742 (1968), and *MFA Mutual Ins. Co.* v. *McKinley*, 245 Ark. 326, 432 S. W. 2d 484 (1968). The facts in those cases lend no precedent to the case at hand.

Reversed.

FOGLEMAN, J., concurring.

JOHN A. FOGLEMAN, Justice, concurring. I do not disagree with the result reached on this particular policy in this particular case. The closing language of the majority opinion appears to so restrict it, but earlier language is so general that it would seem to me to apply to any such policy. Certainly the precedents relied upon are not so restricted.

We must constantly keep in mind the fact that uninsured motorist insurance is not liability coverage on the uninsured motorist, but is indemnity to the insured against the perils of injury by an uninsured motorist. *MFA Mutual Ins. Co.* v. *Bradshaw,* 245 Ark. 95, 431 S. W. 2d 252. See also *Southern Farm Bur. Ins.* v. *Daniel,* 246 Ark. 849, 440 S. W. 2d 582. We must also remember that the parties to the insurance contract are limited in the terms of the contract only by statute and public policy. We have said that acceptance by an insured of such a policy including uninsured motorist coverage is deemed to be approval of all reasonable conditions and limitations expressed therein which are not contrary to public policy. *MFA Mutual Ins. Co.* v. *Bradshaw,* supra. We must also remember that our statutes do not make the uninsured motorist coverage mandatory. They only require that the coverage be offered. They do not require that medical payments coverage be included or offered. Consequently, the freedom of the parties to contract with reference to medical payments is wholly unrestricted. Such payments can be limited in any way the parties see fit.

As pointed out by Drummond in "Uninsured Motorist Coverage—A Suggested Approach to Consistency," 23 Ark. L. Rev. 167, 181, the clause used in this policy says absolutely nothing about reduction of *uninsured motorist coverage.* The reduction under the clause before us only relieves the insurer from payment of that part of the damages which the insured may be entitled to recover from the uninsured tort-feasor which represents an amount paid or payable under medical payments coverage. The example given by Drummond at page 182 of his article is so clearly expository of the application of the policy clause we are considering, I take the liberty of quoting his language, viz:

If, on the other hand, the language of the alternative policy form is utilized, the "damages which the insured may be entitled to recover from the owner or operator of an uninsured automobile" would be $30,000, and of that sum, $2,000 "represents expenses for medical services paid or payable" under the medical payments coverage. Thus, $30,000 less $2,000 is $28,000, but with an applicable uninsured motorist limit of only $10,000, A would be limited to a recovery of that amount.

Drummond's summary of the effect of the clause seems so clearly a correct interpretation that I also set it out, as follows:

Thus, despite the interpretation announced by insurers and most courts, the clauses in the two uninsured motorist insuring agreement forms relative to the application of amounts paid under medical payments coverage are not parallel. The first form states clearly that the uninsured motorist *insurance* shall be reduced. The second states with equal clarity that legally recoverable damages shall be reduced, and the authors of this policy form presumably had the option of selecting the alternative form. Instead, they elected to say essentially this: (1) If the insured's total damages are less than the limits of the uninsured motorist coverage, then that coverage is reduced by the amount paid under the medical payments coverage; (2) If the insured's total damages exceed the sum of the uninsured motorist limits and the medical payments limits, there is no reduction of the former by the latter; (3) If the insured's total damages exceed the uninsured motorist limits but are less than the combined uninsured motorist and medical payments limits, then you must determine the insured's total damages, reduce them by the amount of medical expenses covered by the medical payments coverage, and pay the difference under the uninsured motorist coverage up to the limits of that coverage.

This case comes before us on appeal from a denial of a motion for summary judgment by appellants, and

an order dismissing their counterclaims. It was stipulated that Heiss was conscious for some period prior to his death which occurred within 1½ hours after the collision; that he left a widow who suffered mental anguish and loss of consortium; that he also left three children; that he was an engineer employed at a salary of $40,000; and that he had a life expectancy of 16.81 years. It was stipulated that Hall received various injuries, that he left surviving a widow whose life expectancy was 27.81 years and one child, and that he had a life expectancy of 14.14 years. It seems highly unlikely that the damages to either appellant would be so small as to reduce recoverable damages below the policy limits, but the application of the requisite standard should be a matter for the trial court upon remand.

For various reasons, I do not consider the cases cited in the majority opinion applicable. For instance, in *Stephens* v. *Allied Mutual Insurance Co.,* 182 Neb. 562, 156 N. W. 2d 133, 26 A. L. R. 3d 873 (1968), the clause was voided upon the premise that the coverage required by the statute of that state "is in the nature of a substitute liability policy,"—a premise that has been rejected by us. It is also based upon two separate and *independent* contractual provisions for which a separate premium is charged and collected. In the case before us the affidavit of appellee's actuary is uncontradicted. He states that in computing the premium charged for uninsured motorist coverage under its policy the clause in question is taken into consideration, and that an increased premium rate for uninsured motorist coverage would result from payment of medical expense losses in addition to uninsured motorist coverage. This explanation is consistent with Drummond's theory as to the effect of the clause. Furthermore, in that case the Nebraska court relied to some extent upon decisions that an insurer may not limit its liability under uninsured motorist coverage by setoffs or limitations through "other insurance" clauses, such as reduction claimed with respect to workman's compensation or other insured motorist coverage, a position we have not taken. As a matter of fact, we have taken a contrary position as to "other insurance" coverage in *MFA* v. *Wallace,* 245 Ark.

230, 431 S. W. 2d 742, where we refused to follow decisions of federal district courts in Arkansas. We should have a consistency in the philosophy of our decisions on uninsured motorist coverage. While *Wallace* is certainly not controlling in this case before us, a result based upon *Stephens* certainly constitutes the adoption of an inconsistent philosophy.

*Bacchus* v. *Farmers Insurance Group Exchange,* 106 Ariz. 280, 475 P. 2d 264 (1970) follows *Stephens* as a precedent. Another factor entered into *Bacchus,* however, in that a *different* policy clause was under consideration. In that policy, the medical payments were classified as advancements to be repaid in the form of a setoff against other insurance available under another provision of the same policy. There again, it is clear that separate premiums were paid for the two coverages, with no indication that either premium rate was in any respect dependent upon or related to the other coverage.

In *Tuggle* v. *Government Employees Ins. Co.,* 207 So. 2d 674, 24 A. L. R. 3d 1343 (Fla. 1968), decided by a 3-2 division, the Florida court emphasized the fact that the two classes of coverage "were contracted separately, with independent premiums."

I would remand the case for further proceedings consistent with Drummond's interpretation hereinabove set out and reverse questions as to other such clauses and as to other factual backgrounds until they are really necessarily in issue.