John E. WEBB, a minor, et al., Plaintiffs-Respondents,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant,

Lee Ann Burton, a minor, et al., Intervenors-Respondents.

No. 25659.

Missouri Court of Appeals, Kansas City District.

April 3, 1972.

Thomas E. Deacy, Jr., Edward W. Mullen, Spencer J. Brown, Deacy & Deacy, Kansas City, for appellant.

Lonnie J. Shalton, Popham, Popham, Conway, Sweeney & Fremont, Samuel L. Sayles, Kansas City, for respondents.

SHANGLER, Chief Judge.

The question we must decide is whether an insurer which has issued an automobile liability policy protecting against injuries or death caused by an uninsured motorist may lawfully reduce benefits owing thereunder by payments made to the injured parties under the separate medical expense coverage of that policy.

The parties agree that defendant State Farm Mutual Automobile Insurance Company issued to intervenors Harold E. Burton and Iris Burton its policy of automobile liability insurance. The policy contained under Insuring Agreement I, "Coverage C —Medical Payments" and an Insuring Agreement III, "Uninsured Automobile Coverage". A separate premium was paid for each of such coverages. Under the medical payments coverage, defendant agreed to pay reasonable medical expenses to the named insured or any occupant of the insured automobile up to the declared limit of $500 for each person. Under the uninsured motorist coverage, defendant agreed to pay all sums which the insured (including occupants of the insured automobile who were also "insureds" under this coverage) might be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injuries, including death, sustained by such insured, up to the declared limit of $10,000 for any one person or a total of $20,000 for two or more persons as a result of one accident.

Insuring Agreement III, Uninsured Automobile Coverage, contained this condition:

"13. LIMITS OF LIABILITY.

\* \* \* \* \* \*

(b) Any amount payable under this coverage because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by:

\* \* \* \* \* \*

(3) all sums paid or payable on account of such bodily injury under Cov-

erages C and M of a policy issued by this company."

While the insured automobile was being driven by intervenor Lee Ann Burton, a daughter of the policyholders, it was struck by an automobile negligently operated by Mayme Cappo, an uninsured motorist. The parties agree that all persons injured and damaged by the negligence of the uninsured motorist, including plaintiffs and intervenors, were legally entitled to recover damages from her. The occupants of the insured automobile were minor plaintiff John E. Webb, minor intervenor Lee Ann Burton, and Terry M. Short, all of whom were seriously injured, and Randy L. Burton, minor son of the policyholders, who was killed in the collision. The parties have stipulated that the value of all claims for injuries, wrongful death, loss of services and medical expenses exceeded the $20,000 applicable policy limit under the uninsured motorist coverage (and, apparently, that the medical expenses exceeded $500 per person). Defendant recognized its liability to pay the full $20,000 uninsured motorist coverage but has contended that it is not liable to them also under the medical payments coverage of the policy.

Defendant settled the claim of the minor Terry M. Short and that of his parents for their loss of services for $2500 and paid the Webbs $500 under their medical payments coverage. Defendant has asserted that because of these payments, there remains available $17,000 under the uninsured motorist coverage for payment of all claims of plaintiffs and intervenors, and has admitted liability in that amount. Defendant sought a declaration that its total remaining liability was limited to $17,000 and that the provision of the policy crediting sums paid or payable under the medical payments provision against the total liability of $20,000 under the uninsured motorist coverage was valid, enforceable and binding.

It was the judgment of the trial court that the uninsured motorist and medical payment provisions of the policy were separate coverages and that defendant insurer was not entitled to deduct medical expense payments from the $20,000 otherwise payable under the uninsured motorist section of the policy, and that the provision of the policy (Insuring Agreement III(13) (b) (3)) undertaking to allow such credit was unenforceable. Accordingly, the court also adjudged that, in addition to the $20,000 already paid, the defendant owed under the medical expense provision of the policy $500 each to plaintiff John E. Webb, intervenors Burton (for burial expense of their deceased son) and plaintiff Lee Ann Burton. From this judgment defendant has appealed.

■ It is the position of the defendant that its right to offset medical payments due under the policy against its liability under the uninsured motorist coverage derives from contractual terms, consensually reached, which are clear and unambiguous and to which a court must give effect. It is the rule that except to the extent a statute may inhibit or public policy control, parties to an insurance contract are free to place such limitations and restrictions on the insurer's liability as they may be willing to agree. Kisling v. MFA Mutual Insurance Company, Mo.App., 399 S.W.2d 245, 252 [10, 11]; Northwestern Mutual Insurance Company v. Haglund, Mo.App., 387 S.W.2d 230, 232 [1]. For reasons we presently give, we have concluded that the effect of Insuring Agreement III(13) (b) (3) is to limit the defendant's uninsured motorist liability so as to reduce it below the statutory minimum in derogation of statutory requirement and in violation of declared public policy.

The uninsured motorist statute in effect at the time defendant's policy of insurance issued was Sec. 379.203, V.A.M.S. and which to the extent here pertinent, provided:

"1. No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or prin-

cipally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits for bodily injury or death set forth in section 303.030, RSMo, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; *provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage in writing; and provided further, that unless the insured named in the policy requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued him by the same insurers.* Provisions affording such insurance protection against uninsured motorists issued in this state prior to October 13, 1967, shall, when afforded by any authorized insurer, be deemed, subject to the limits prescribed in this section, to satisfy the requirements of this section."[1] (Emphasis supplied)

Section 303.030 of the Motor Vehicle Safety Responsibility Law, to the extent here pertinent, provides:

" . . . . . . . every such policy or bond is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than ten thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, to a limit of not less than twenty thousand dollars because of bodily injury to or death of two or more persons in any one accident."

In Sterns v. M. F. A. Mutual Insurance Company, Mo.App., 401 S.W.2d 510, 1. c. 514 [1, 2], a case decided before uninsured motorist insurance had become a subject of legislative concern in this state, we recognized that such coverage is designed to close a gap in the protection afforded the public under existing financial responsibility laws and, within fixed limits, to provide recompense to innocent persons injured by motorists who lack financial responsibility. Maryland Casualty Company v. Howe, 106 N.H. 422, 213 A.2d 420, 421 [1, 2]; Kraft v. Allstate Insurance Company, 6 Ariz.App. 276, 431 P.2d 917, 919 [2]; Harleysville Mutual Casualty Co. v. Blumling, 429 Pa. 389, 241 A.2d 112, 115 [2]; Mission Insurance Company v. Brown, 63 Cal.2d 508, 47 Cal.Rptr. 363, 407 P.2d 275, 276 [2]. We also cited with approval the view, then as now generally held, that the purpose of uninsured motorist statutes (401 S.W.2d 1. c. 517 [1, 2]) " 'is to give the same protection to the person injured by an uninsured motorist as he would have had if he had been injured in an accident caused by an automobile covered by a standard liability policy' ". Stephens v. Allied Mutual Insurance Company, 182 Neb. 562, 156 N.W.2d 133, 136 [6]; American Motorists Ins. Co. v. Thompson, 253 Or. 76, 453 P.2d 164, 165; 7 Am.Jur.2d, Automobile Insurance Sec. 135, pp. 460–461; 7 Blashfield, Automobile Law and Practice, Sec. 274.4, p. 56 (Third Edition). Such statutes are liberally construed to accomplish their highly remedial purpose. Bryant v. State Farm Mutual Automobile Ins. Co., 205 Va. 897, 140 S.E.2d 817, 819 [1]; Gunnels v. American Liberty Ins. Co., 251 S.C. 242, 161 S.E.2d 822, 824 [5].

Since 1967, when the uninsured motorist law was enacted, the minimum limits of any uninsured motorist coverage issued

---

1. This section was amended by H.B. 85, Laws of 1971, page 22, by deletion of the portion we have emphasized. The effect of the deletion is to require unconditionally that any policy issuing in Missouri insuring a Missouri automobile against liability provide uninsured motorist coverage in the minimum limits set forth in Sec. 303.030 of the Motor Vehicle Safety Responsibility Law, and to deny the insured the option previously allowed of rejecting such coverage.

in this state have been required to conform to the minimum limits of $10,000 per person and $20,000 per occurrence prescribed for automobile liability policies under the financial responsibility law. These terms of the uninsured motorist statute became a part of each policy containing such coverage including the one issued by defendant under which plaintiffs and intervenors claim as insureds. It is the public policy of Missouri established by the uninsured motorist statute, then, that each insured under such coverage have available the full statutory minimum to exactly the same extent as would have been available had the tortfeasor complied with the minimum requirements of the financial responsibility Law. (In accord: Tuggle v. Government Employees Insurance Co. (Fla.), 207 So.2d 674, 675 [1]; Bacchus v. Farmers Insurance Group Exchange, 106 Ariz. 280, 475 P.2d 264, 267 [1, 2]; Stephens v. Allied Mutual Insurance Company, 182 Neb. 562, 156 N. W.2d 133, 139 [11]; all of which construe uninsured motorist and financial responsibility laws which are substantially the same as our own.)

Insuring Agreement III(13) (b) (3), drawn by the insurer to comply with the statutory requirements of uninsured motorists coverage, therefore, must be construed in the light of this purpose and policy. Considered in that perspective, defendant's policy provision which undertakes to reduce the amount payable under the uninsured motorist coverage by an amount due under the medical payments coverage is on its face repugnant to the mandate of our uninsured motorists and financial responsibility laws which require limits of *not less than* $10,000 for injury to or death of one person and $20,000 for injury to or death of two or more persons in any one accident. Although the question we consider has not been passed on previously by an appellate court of this state, the result we reach accords with the weight of sound authority

in other jurisdictions which hold (under statutes substantially the same as our own) that an uninsured motorist policy provision which authorizes a setoff of payments owing thereunder by amounts payable under a separate medical payments coverage is void and unenforceable as resulting in a reduction of insured motorist coverage below the minimum required by statute. Other jurisdictions have reached different conclusions, either because of express statutory direction (e. g. Northwestern Mutual Insurance Company v. Rhodes, 238 Cal.App. 2d 64, 47 Cal.Rptr. 467, 469) or by reasoning we do not find impressive.[2]

The Supreme Court of Nebraska in Stephens v. Allied Mutual Insurance Company, 182 Neb. 562, 156 N.W.2d 133, 1. c. 138 [10] (1968), under policy and statutory provisions very similar to those we consider, rejected the insurer's claim of contractual right to reduce the amount payable under the uninsured provision of the policy by the amount paid under the medical payments coverage:

"The minimum coverage required by statute is $10,000 per person and $20,000 per accident. The uninsured motorist protection required to be offered by this statute as between the insured and his insurer is in the nature of a substitute liability policy; and to permit a limitation of this coverage by a policy provision so that it may be reduced below that required by statute, would be void as being contrary to the statute and the declared public policy and purpose as embodied in the provisions of the law.

"The two coverages (medical payment and uninsured motorist) are separate and independent contractual provisions in the policy for which a separate premium is charged and collected. . . . (I)t is argued that the setoff in medical payments which reduces the coverage is supplied by the insurer under this separately

---

2. The decisions on this question are collected and discussed in the principal annotation and pocket supplement: "Uninsured Motorist—Medical Expenses", 24 A.L.R.3d 1353.

contracted for medical payment coverage. Nevertheless, the provision either limits the substituted liability coverage or the separately contracted and charged for liability under the medical payment coverage and this is accomplished by transporting the medical payment coverage into the uninsured motorist coverage by way of limitation . . . . . . .

"The complex, if not devious, ramifications of the application of the language of this clause can be quite simply illustrated. If the plaintiff in this case had contracted for medical expense coverage in the sum of $10,000 and had suffered medical expenses in excess of this amount, the effect of the setoff clause herein involved would be to completely eliminate the uninsured motorist coverage."

In a case decided virtually contemporaneously with *Stephens*, the Supreme Court of Florida in Tuggle v. Government Employees Insurance Co., 207 So.2d 674, 675 [1] (1968), was confronted with the same question within the same statutory and contractual context and came to the same result. That court, too, determined that the two coverages were independent, separately contracted with separate premiums charged, and that the effect of the policy offset clause was to decrease impermissibly the uninsured motorist coverage beneath the statutory minimum. The Arizona Supreme Court in Bacchus v. Farmers Insurance Group Exchange, 106 Ariz. 280, 475 P.2d 264 (1970) in treating with policy and statutory provisions similar to those in *Stephens* and *Tuggle* explicitly adopted the rationale of those cases and refused to countenance an attempted reduction by the insurer of the amount paid under the uninsured motorist provision by the amount paid under the medical payment coverage, (l. c. 266) : "Permitting offsets of any type would allow insurers, by contract, to alter the provisions of the statute and to escape all or part of the liability which the Legislature intended they should provide. The medical payment coverage part of the policy is independent of the uninsured motorist coverage and should be treated the same as if it were carried with a different company." On the persuasive precedents of *Stephens, Tuggle* and *Bacchus,* the Arkansas Supreme Court has also refused to enforce a comparable liability limiting clause in an uninsured motorist policy. Heiss v. Aetna Casualty & Surety Company (1971), Ark., 465 S.W.2d 699. See also, Lyon v. Hartford Accident & Indemnity Company, 25 Utah 2d 311, 480 P.2d 739, 744 [3]; Sims v. National Casualty Company (Fla.App.1965), 171 So.2d 399, 400 [1].

Defendant would have us conform our decision on the question presented, not to these precedents and the principles they apply, but to such holdings as Morgan v. State Farm Mutual Automobile Insurance Company (La.App.1967), 195 So.2d 648; Hamilton v. Slover, Mo., 440 S.W.2d 947; L'Manian v. American Motorists Insurance Co., 4 Conn.Cir. 524, 236 A.2d 349 (1967), and Yarrington v. Thornburg (Del.1964), 205 A.2d 1. Morgan held that an unambiguous policy provision which reduced the insurer's liability under an uninsured motorist coverage by amounts paid under separate medical payment coverage offended neither Louisiana statute nor its public policy and would be given effect. Although *Morgan* involved a Missouri policy issued to a Missouri resident covering a Missouri automobile, the Court of Appeal of Louisiana obviously treated the policy as a Louisiana contract.[3] That decision, how-

---

3. *Morgan* was decided in March, 1967, before the Missouri uninsured motorist statute was enacted, but more than a year after our opinion was filed in Sterns v. M. F. A. Mutual Insurance Company, supra, declaring the general nature and purpose of uninsured motorist insurance in Missouri. *Morgan* neither made reference to that case nor gave effect to the judicial policy it declared. It is also of interest that a later decision of the Court of Appeal of Louisiana, Bunch v. Frezier, La.App., 239 So.2d 680, 683 [7] (1970) adopted the view, rejected by *Morgan* that medical payment liability and uninsured motorist liability may each be enforced as independent contractual obligations.

ever, makes no reference to either the text or purpose of the Louisiana uninsured motorist statute and is therefore uninstructive as a precedent for our purposes. We have already determined that the statutory policy of Missouri forbids impairment of the prescribed minimum uninsured motorist coverage by another policy provision attempting to limit liability thereunder.

Defendant also seems to argue that we are bound by the rule in Hamilton v. Slover, supra—which denies double recovery to one claiming medical expenses under both the medical payment and liability clauses of a tortfeasor's insurance contract—to give effect to the provision in its uninsured motorist coverage which seeks to accomplish the same purpose. In *Hamilton,* the insurance policy had been issued to the tortfeasor and, in addition to the normal liability coverage, provided for reimbursement —without regard to fault—of medical expenses incurred by an occupant of the insured automobile resulting from its operation. Prior to trial the insurer had paid $500 to plaintiff under the medical expense coverage. From the judgment subsequently awarded plaintiff, the Supreme Court approved a reduction of damages by $500, the amount previously paid, in order to prevent the windfall to plaintiff of a double recovery. *Hamilton* adopts the view expressed in Yarrington v. Thornburg, supra, which is uniformly favored, that payment from a tortfeasor from a fund created by him (usually insurance coverage) may be shown to mitigate recovery to prevent a double recovery of the same item of damage.[4]

■ While we do not doubt the soundness of the rule in Hamilton v. Slover, it has no application to the facts of this case. The position of our plaintiffs and intervenors is not analogous to that of the plaintiff in *Hamilton,* nor that of this defendant insurer to the tortfeasor there. As to the uninsured motorist coverage, the parties are in the relationship of insureds and insurer. As to the medical payments coverage, the insurer is not in the position of a tortfeasor, but is called upon to honor a constructual obligation which arises without regard to fault. In addition to its general obligation to indemnify against damage to others, the defendant insurer made two separate promises, each supported by an independent consideration. It agreed to pay the amount due insured from an uninsured driver and medical expenses of the occupants up to the designated limits. We hold it to each of these promises, otherwise the insurer would have the windfall of premiums collected and be unjustly enriched thereby.

The views we have expressed are incompatible with defendant's supporting authority, L'Manian v. American Motorists Insurance Co., 4 Conn.Cir. 524, 236 A.2d 349, which holds, on the analogy of the rule which denies recovery for medical expenses under both the liability and medical payment clauses of a tortfeasor's policy, that an insured may claim medical expenses either under the medical payment clause or uninsured motorist clause, but not under both. We reject that view as it applies to the policy provisions we are called upon to construe.

Moreover, unlike uninsured motorist coverage, no legislative imperative requires that every automobile liability policy issue with a medical payments component or that it conform to a minimum limit.

The judgment is affirmed.

All concur.

PRITCHARD, SWOFFORD, and WASSERSTROM, JJ., not participating because not members of the court when cause was heard.

4. These authorities are collected in the annotation: "Damages—Credit—Medical Payments", 11 A.L.R.3d 1115, 1117.