BERRIOS, APPELLANT, *v*. STATE FARM INSURANCE COMPANY, APPELLEE.

[Cite as *Berrios v. State Farm Ins. Co.*, 98 Ohio St. 3d 109, 2002-Ohio-7115.]

*Insurance — Automobile liability — UM/UIM coverage — Subrogation clauses — UM/UIM provisions are worthy of special protection from any dilution by payments made under any other policy provisions.*

(No. 2001-1618 — Submitted June 5, 2002 — Decided December 20, 2002.)

APPEAL from the Court of Appeals for Franklin County, No. 00AP-504.

————————————

**PFEIFER, J.**

Factual Background

**{¶1}** Appellant, Master G. Berrios, was involved in an automobile accident on December 16, 1997. The driver of the other vehicle was at fault in the collision and was insured by Progressive Insurance Company ("Progressive"). Berrios suffered damages that included $6,354.37 in medical bills.

**{¶2}** At the time of the accident, Berrios was insured under an automobile insurance policy with appellee, State Farm Insurance Company ("State Farm"), which provided $100,000 per person in underinsured motorist ("UIM") coverage and $25,000 in medical payments coverage.

**{¶3}** Under the policy that covered Berrios, State Farm charged separate premiums for UIM coverage and medical payments coverage. The policy's biannual premium included $26.80 for uninsured/underinsured motorist coverage and $41.65 for medical payments coverage.

**{¶4}** As to medical payments coverage, the policy reads:

**{¶5}** "We will pay reasonable medical expenses incurred, for bodily injury caused by accident, for services furnished within three years of the date of the accident. * * *

**{¶6}** "* * * We will pay medical expenses for bodily injury sustained by:

**{¶7}** "* * *

**{¶8}** "2. any other person while occupying:

**{¶9}** "a. a vehicle covered under the liability coverage * * *."

**{¶10}** In the policy, State Farm claims a right of subrogation over medical payments paid. The language reads:

**{¶11}** "3. Our Right to Recover Our Payments

**{¶12}** "* * *

**{¶13}** "b. Under medical payments coverage:

**{¶14}** (1) we are subrogated to the extent of our payments to the right of recovery the injured person has against any party liable for the bodily injury.

**{¶15}** "* * *

**{¶16}** "(3) if the person to or for whom we make payment recovers from any party liable for the bodily injury, that person shall hold in trust for us the proceeds of the recovery, and reimburse us to the extent of our payment."

**{¶17}** Before Berrios settled with Progressive, State Farm paid $6,354.37 for Berrios's medical bills under the medical payments coverage.

**{¶18}** Progressive offered the entirety of the tortfeasor's $12,500 coverage to settle the case. State Farm gave its consent for Berrios to accept Progressive's $12,500 offer, thereby waiving its subrogation rights under the UIM coverage. State Farm did not, however, waive its subrogation rights for its medical payments. State Farm asserted a right to be repaid its $6,354.37 payment from the $12,500 paid by Progressive.

**{¶19}** Berrios accepted Progressive's limits of $12,500 with the understanding that he would challenge State Farm's claim to reimbursement for the medical payments. Berrios and State Farm settled Berrios's UIM claim for an additional $6,000, and they agreed that State Farm's right to reimbursement of the amount of the medical payments, $6,354.37, would be determined in litigation.

**{¶20}** On April 9, 1999, Berrios filed a declaratory judgment action in the Franklin County Court of Common Pleas. On February 3, 2000, the parties stipulated facts, narrowing the controversy to the question of whether State Farm could enforce a right of subrogation for the medical payments from the proceeds of Berrios's settlement with the tortfeasor, in light of the fact that State Farm had also paid Berrios UIM coverage benefits.

**{¶21}** Both parties submitted motions for summary judgment. On April 10, 2000, the trial court granted State Farm's motion for summary judgment and denied that of Berrios. Berrios appealed, and the Tenth District Court of Appeals affirmed the trial court. The cause is before this court upon the allowance of a discretionary appeal.

Law and Analysis

**{¶22}** In *Shearer v. Motorists Mut. Ins. Co.* (1978), 53 Ohio St.2d 1, 7 O.O.3d 1, 371 N.E.2d 210, this court struck down an insurance policy provision that permitted an insurer to reduce the amount recoverable under uninsured motorist ("UM") coverage by the amount the insurer paid under the medical payments portion of the policy. "A contract condition providing for a deduction for medical payments paid under another portion of the insurance contract is in derogation of the public policy and purpose underlying R.C. 3937.18." Id. at syllabus.

**{¶23}** This court considered the contractual setoff as a whittling away of the uninsured motorist protection insurers were required to provide by statute:

**{¶24}** " 'Permitting offsets of any type would allow insurers, by contract, to alter the provisions of the statute and to escape all or part of the liability which the Legislature intended they should provide. The medical payment coverage part of the policy is independent of the uninsured motorist coverage and should be treated the same as if it were carried with a different company. * * *

**{¶25}** " '* * * The fact that the motorist sees fit to clothe himself with other insurance protection and pays a premium therefor—such as medical payments—cannot alter the mandatory safeguards that the Legislature considers necessary for the well-being of the citizen drivers of our state.' " *Shearer*, 53 Ohio St.2d at 7-8, 7 O.O.3d 1, 371 N.E.2d 210, quoting *Bacchus v. Farmers Ins. Group Exchange* (1970), 106 Ariz. 280, 282-283, 475 P.2d 264.

**{¶26}** In addition to the public-policy reasoning behind *Shearer* was a more practical issue—that people who pay separate premiums for separate coverages should get what they pay for: " '[A] policy provision which the insured considers to be additional protection and for which he pays a premium with such extra protection in mind cannot be transposed by the insurer into a reduction of the mandatory minimum coverage.' " Id.

**{¶27}** In *Grange Mut. Cas. Co. v. Lindsey* (1986), 22 Ohio St.3d 153, 22 OBR 228, 489 N.E.2d 281, this court considered whether a subrogation clause, rather than a setoff clause as in *Shearer*, could allow insurers to reduce UM coverage payments by the amount paid under medical payments coverage.

**{¶28}** In *Lindsey*, the insured was injured in an automobile collision caused by an uninsured motorist. The insurer paid the insured's medical bills pursuant to his medical payment coverage. The insured's UM claim went to arbitration. The arbitrator arrived at an award well within the policy limits. The insurer sought to reduce the amount of the arbitration award by the amount it had previously paid under the medical payments coverage. The insurer argued that its case was different from the insurer in *Shearer* because of the subrogation clause,

which had been lacking in *Shearer*. This court, concerned less with terminology than with the practical effect of the subrogation clause, rejected that distinction:

{¶29} "[A]n insurance policy clause which provides to the insurer a contractual right of subrogation as to payments made under the medical payments portion of the policy does not enable the insurer to avoid obligations it incurs pursuant to the uninsured motorist provision of the same insurance policy. Thus, even where the policy provides for subrogation as to payments made as medical payments coverage, a contract provision which would, in essence, enable the insurer to set off such medical payments against amounts due to the insured pursuant to uninsured motorist coverage is void as in derogation of the public policy and purpose underlying R.C. 3937.18."

{¶30} The court in *Lindsey* realized that, as in *Shearer*, its decision resulted in a "double recovery"—i.e., recovery under both the UM and medical payments policy provisions—for the insured. *Lindsey*, 22 Ohio St.3d at 155, 22 OBR 228, 489 N.E.2d 281. Double recovery did not trouble the court. Instead, it was more concerned that insurers would use subrogation clauses to avoid their obligations to provide full coverage:

{¶31} "We cannot accept [the] argument that the presence of a subrogation clause prevents the medical payments coverage provided under one portion of an insurance policy from being considered as 'collateral' to uninsured motorist coverage provided under a separate portion of the same policy. * * *

{¶32} " 'Permitting offsets of any type would allow insurers, by contract, to alter the provisions of the statute and to escape all or part of the liability which the Legislature intended they should provide. * * *' *Bacchus v. Farmers Ins. Group Exchange* (1970), 106 Ariz. 280, 282, 475 P.2d 264." *Lindsey*, 22 Ohio St.3d at 155-156, 22 OBR 228, 489 N.E.2d 281.

{¶33} The court concluded that "[s]o long as the insured pays separate premiums for medical payments coverage and uninsured motorist coverage, each

of which the insured considers to be additional protection, the mere inclusion of a subrogation clause within the policy, which will enable the insurer to pursue collection from the tortfeasor of both types of payments made, does not alter the result mandated by *Shearer*." Id. at 156, 22 OBR 228, 489 N.E.2d 281.

{¶34} There is nothing in the present case that significantly differentiates it from *Shearer* and *Lindsey*. Like the insurer in *Lindsey*, State Farm treated UIM coverage separately from medical payments coverage by setting out separate conditions for payment under the contract and charging separate premiums. As was the case in *Lindsey*, State Farm was required to offer its insured UM/UIM motorist coverage by R.C. 3937.18.

{¶35} One difference between this case and its predecessors is that this case involves UIM coverage rather than UM coverage. There is no significance to that distinction. The thrust of *Shearer* and *Lindsey* was the rejection of policy language that created setoffs against statutorily mandated UM coverage. The version of R.C. 3937.18 operative in this case mandated UIM as well as UM coverage.

{¶36} Moreover, as this court stated in *Clark v. Scarpelli* (2001), 91 Ohio St.3d 271, 276, 744 N.E.2d 719, beneficiaries of UIM and UM coverage are entitled to the same final result:

{¶37} "As can be gleaned from the public policy behind the enactment of the underinsured motorist statute, as well as the statutory language, the purpose of underinsured (and uninsured) motorist coverage is to treat injured automobile liability policyholders the same whether a tortfeasor is underinsured or uninsured."

{¶38} Thus, we must apply *Lindsey* to this case involving UIM coverage as we would to a case involving UM coverage.

{¶39} If Berrios had been injured by an uninsured driver, and suffered the same injuries, State Farm would have paid his $6,354.37 in medical bills pursuant

to the medical payments coverage in the policy. Assuming that his claims were valued at $18,500 (as they were here), State Farm would be responsible for paying Berrios the $6,000 difference between the amount of damages and the limit of the tortfeasor's coverage. Pursuant to *Lindsey*, State Farm would not be able to set off or subrogate the $6,354.37 it had previously paid under the medical payments coverage. Berrios would receive double recovery under the policy, a result deemed acceptable by the court in *Lindsey* to prevent the dilution of statutorily mandated coverage.

{¶40} To be treated the same as UM policyholder in this case, Berrios must recover under both the medical payments and UIM coverage. That is the result of the payment of separate premiums as well as the applicability of *Shearer*, *Lindsey*, and *Clark*.

{¶41} Appellee attempts to paint this case as strictly a subrogation matter. It cites *Blue Cross & Blue Shield Mut. of Ohio v. Hrenko* (1995), 72 Ohio St.3d 120, 647 N.E.2d 1358, as controlling. In *Hrenko*, the insured was injured by an uninsured motorist. His group health insurer, Blue Cross, had a subrogation clause in its contract allowing for reimbursement from money received from any other insurer as the result of an accident. Hrenko received $42,000 from Allstate Insurance Company pursuant to his UM claim. Blue Cross then sought recovery of its medical payments from the UM coverage proceeds. This court held that Blue Cross was entitled to reimbursement from Hrenko after Hrenko had received compensation by way of settlement from Allstate. The court rejected Hrenko's argument that the Blue Cross subrogation provision was unenforceable because it violated public policy by interfering with the contract with his motor vehicle insurer and by reducing his UM coverage.

{¶42} The dispositive distinction between this case and *Hrenko* is that, here, the same company is offering the UIM and medical payments coverages. In *Hrenko*, whether Allstate was diluting its UM coverage by subtracting another

amount it was liable for was not an issue. Allstate paid its entire $42,000 to Hrenko without any setoff. The insurer seeking reimbursement in *Hrenko* was not a party to the contract providing UM/UIM coverage. *Shearer* and *Lindsey* are about forcing UM/UIM insurers to meet the public-policy expectations of their statutorily mandated coverage. *Shearer* and *Lindsey* do not address what happens to proceeds from the UM coverage outside the relationship of the policyholder and the UM insurer.

**{¶43}** This case, like *Shearer* and *Lindsey* before it, does no violence to most insurance subrogation clauses. These cases exist in the separate world of UM/UIM coverage. This court has long held that UM/UIM provisions are worthy of special protection from any dilution by payments made under other policy provisions.

**{¶44}** Accordingly, we reverse the judgment of the court of appeals.

Judgment reversed

and cause remanded.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

——————————

**MOYER, C.J., dissenting.**

**{¶45}** Writing in dissent in *Grange Mut. Cas. Co. v. Lindsey* (1986), 22 Ohio St.3d 153, 156, 22 OBR 228, 489 N.E.2d 281, relied upon by the majority, Justice Holmes urged the adoption of the following proposition of law: "When an automobile liability policy provides medical payments coverage and also uninsured motorist coverage within the same contract, a provision which reduces the amount of any payment owed under the uninsured motorist coverage by the amount of any payments made under the medical payments coverage is valid and enforceable if under the contract the insurer is subrogated to the rights of the insured to the extent of any payments made under the medical payments provision

8

and if the insured's total damages are equal to or less than the limits of coverage provided for protection against uninsured motorists." Justice Holmes cogently observed that the majority's holding in *Lindsey* produced the illogical result that a policyholder is better off being struck by an uninsured motorist than by a tortfeasor with sufficient policy limits to cover his full claim. Only in that manner could the insured obtain the double recovery that the *Lindsey* majority acknowledged resulted from its decision. Justice Holmes deemed the holding in *Lindsey* to be inconsistent with the legislative purpose of compulsory uninsured motorist coverage, that being " 'to place the injured policyholder in the same position, with regard to the recovery of damages, that he would have been in if the tortfeasor had possessed liability insurance.' " Id. at 157, 22 OBR 228, 489 N.E.2d 281, quoting *Bartlett v. Nationwide Mut. Ins. Co.* (1973), 33 Ohio St.2d 50, 52, 62 O.O.2d 406, 294 N.E.2d 665.

{¶46} I agree with Justice Holmes's analysis, which applies in the context of a claim for underinsurance benefits as fully as it does to a claim for uninsurance benefits. See *Blue Cross & Blue Shield Mut. of Ohio v. Hrenko* (1995), 72 Ohio St.3d 120, 123, 647 N.E.2d 1358, quoting *Motorists Mut. Ins. Co. v. Andrews* (1992), 65 Ohio St.3d 362, 365, 604 N.E.2d 142 ("The underlying public policy for provision of uninsured and underinsured motorist coverage is 'to assure that an injured person receive at least the same amount of compensation whether the tortfeasor is insured or uninsured' ").

{¶47} There is no public policy that an insured receive *more* than he or she would have received had the tortfeasor been fully insured.

{¶48} As noted by the court of appeals herein, Berrios "settled his underinsured claim with [State Farm] for $6,000, making his total recovery $18,500. [Berrios] had available to him $87,500 in underinsured coverage with State Farm. There is no reason for him to settle for a mere $6,000 unless he believed he was fully compensated for all his damages. Therefore, because

[Berrios] was fully compensated, [State Farm] is entailed to reimbursement for medical payments from the $12,500 recovered from the tortfeasor's insurance company."

**{¶49}** I would affirm the trial court and the court of appeals and hold the subrogation clause in the State Farm policy to be valid and enforceable.

COOK and LUNDBERG STRATTON, JJ., concur in the foregoing dissenting opinion.

_____

Frank E. Todaro and Edwin E. Schottenstein, for appellant.

Gallagher, Gams, Pryor, Tallan & Littrell, L.L.P., and Mark H. Gams, for appellee.

Zavarello & Davis, L.P.A., William Zavarello and Rhonda Gail Davis, urging reversal for amicus curiae Ohio Academy of Trial Lawyers.

_____