DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Auto-Owners Mutual Insurance Company has appealed from a decision of the Summit County Court of Common Pleas that entered summary judgment in favor of Plaintiff-Appellee Michael Richardson, as executor of the Estate of James P. Richardson. This Court reverses and remands.
 I {¶ 2} On April 12, 2002, Appellee filed suit against Appellant and Victoria J. Herhold for breach of contract and wrongful death. In the complaint, Appellee alleged that on June 19, 2001, while driving east along Tonawanda Avenue, Akron, Ohio, James P. Richardson ("decedent") was killed in a car accident caused by Mrs. Herhold. Appellee alleged that Mrs. Herhold was driving south on Brittain Road and that she failed to stop at a red light at the intersection of Tonawanda Avenue and Brittain Road. Appellee further alleged that Mrs. Herhold negligently caused her vehicle to collide with the motorcycle driven by the decedent and that as a proximate result of her negligence, the decedent sustained fatal injuries. Appellee, brother of the decedent, asserted that at the time of the accident, the decedent was acting on behalf of Modern Auto Sales, Inc. ("MASI"), and that the company was insured by an automobile insurance policy held by Appellant. Appellee claimed that the decedent was entitled to underinsured motorists ("UIM") coverage in the amount of $300,000 pursuant to Scott-Pontzer v. Liberty Mut. Fire Ins.Co. (1999), 85 Ohio St.3d 660, overruled in part, WestfieldIns. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849.
 {¶ 3} Appellant filed an answer and counterclaim on May 16, 2002. In the counterclaim, Appellant sued for declaratory judgment. Appellant asserted that Appellee was not entitled to UIM coverage under the policy it maintained with MASI because the decedent was operating a motorcycle at the time of the accident, which was not included within the definition of "automobile" contained in the subject policy of insurance.
 {¶ 4} On July 19, 2002, Appellee filed motions for summary judgment against Mrs. Herhold and Appellant. In the motion against Appellant, Appellee contended that summary judgment should be granted in his favor on the issue of liability because the motorcycle the decedent was driving when the accident occurred "falls within the purview of the policy definition of an automobile, as a motorcycle is clearly a motor vehicle. The definitional section of the policy does not limit coverage to automobiles, but extends coverage to all motor vehicles owned and operated by the insured." In the motion against Mrs. Herhold, Appellee argued that the motion should be granted in his favor on the issue of liability because "Ms. Herhold's guilty plea [for aggravated vehicular homicide and aggravated vehicular assault] in the death of [the decedent] and her ultimate conviction constitutes a determination by proof beyond a reasonable doubt that [her] negligence caused the death of [the decedent]." Both the driver and Appellant responded to the motions.
 {¶ 5} In its reply to Appellee's motion, Appellant contended that the decedent was not an "insured" because the decedent was not listed in the policy as the "named insured" and the decedent was not operating an automobile insured under the policy when the accident occurred. Appellant further argued that the decedent was not entitled to recover UIM benefits because Appellee failed to establish that the decedent was injured by an underinsured automobile and that the driver was the sole and proximate cause of the decedent's injuries.
 {¶ 6} On January 29, 2003, the trial court granted summary judgment against the driver and Appellant on the issue of liability.[1] The trial court found that the definition of "insured" was ambiguous and that based on the rationale expressed in Scott-Pontzer, employees of MASI also qualified as "insureds" under the policy. The court further found that the decedent would also be entitled to UM/UIM benefits because the motorcycle the decedent was driving at the time of the accident was owned by MASI and therefore it was an "insured automobile" which would entitle the decedent to coverage based on the terms of the policy. The trial court rejected Appellant's argument that Appellee failed to prove that Mrs. Herhold's negligence was the sole and proximate cause of the decedent's death. The trial court also concluded that the driver was an underinsured motorist.
 {¶ 7} Appellant filed a motion for reconsideration on January 31, 2003. Appellee filed a response. The trial court denied the motion on February 25, 2003. During this time, the matter proceeded to a jury trial on the issue of damages. However, before the matter was decided by a jury, the trial court entered an order, whereby it was agreed that: (1) the trial court's journal entries dated January 29, 2003 and February 25, 2003, were incorporated for purposes of appeal; and (2) if coverage was found to arise in favor of Appellee after appealing to the highest court in the state, Appellee was only entitled to recover $108,000 in damages plus statutory interest. Judgment was entered in favor of Appellee in the amount of $108,000 plus interest.
 {¶ 8} Appellant filed the instant appeal, asserting six assignments of error. We have rearranged and consolidated some of Appellant's assignments of error to facilitate review.
 II Assignment of Error Number Three
"The trial court erred in granting appellee's motion for summary judgment by finding that the decedent was operating an insured automobile."
 {¶ 9} In Appellant's third assignment of error, it has argued that the trial court erred in granting summary judgment in favor of Appellee because the decedent was not occupying an "insured automobile" at the time of the accident. This Court agrees.
 {¶ 10} As an initial matter, we note that the appropriate appellate standard of review for an award of summary judgment is de novo. Doe v. Shaffer (2000), 90 Ohio St.3d 388, 390, citingGrafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. Thus, this Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Civ.R. 56(C); Viock v.Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12, certiorari denied (1986), 479 U.S. 948, 107 S.Ct. 433, 93 L.Ed.2d 383, quoting Norris v. Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1, 2.
 {¶ 11} According to Civ.R. 56(C), summary judgment is proper if: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, viewed most strongly in favor of the nonmoving party, that reasonable minds can come to but one conclusion, which is adverse to the non-moving party. See State ex rel. Howard v. Ferreri (1994),70 Ohio St.3d 587, 589.
 {¶ 12} To prevail on a motion for summary judgment, the moving party must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine issue" exists to be litigated for trial. State ex rel. Zimmerman v. Tompkins (1996),75 Ohio St.3d 447, 449.
 {¶ 13} Civ.R. 56(C) provides an exclusive list of materials which the trial court may consider on a motion for summary judgment. Spier v. American Univ. of the Caribbean (1981),3 Ohio App.3d 28, 29. Specifically, the materials include: affidavits, depositions, transcripts of hearings in the proceedings, written admissions, written stipulations, answers to interrogatories, and the pleadings. Civ.R. 56(C).
 {¶ 14} In reviewing the instant matter, this Court further notes that in construing the terms of the insurance policy at issue, the Ohio Supreme court has stated that: "[I]nsurance policies should be enforced in accordance with their terms as are other written contracts. Where the provisions of the policy are clear and unambiguous, courts cannot enlarge the contract by implication so as to embrace an object distinct from that originally contemplated by the parties." Goodyear Tire RubberCo. v. Aetna Cas. Sur. Co., 95 Ohio St.3d 512, 2002-Ohio-2842, at ¶ 8, quoting Rhoades v. Equitable Life Assur. Soc. of theU.S. (1978), 54 Ohio St.2d 45, 47. Moreover, a contract that contains language which is clear and unambiguous, its interpretation is a question of law. Red Head Brass, Inc. v.Buckeye Union Ins. Co. (1999), 135 Ohio App.3d 616, 627, appeal not allowed (2000), 88 Ohio St.3d 1447.
 {¶ 15} Here, Appellant has argued that the trial court erred in granting Appellee's motion for summary judgment because, among other things, the decedent was not operating an "insured automobile" at the time of the accident. The policy provides that Appellant is liable to an "insured" for bodily injury that arises as a result of an accident caused by an underinsured automobile. The relevant provision in the policy provides:
"1. Damages for bodily injury caused by underinsured automobiles.
"To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an underinsured automobile because of bodily injury, sickness or disease, including death, resulting therefrom, hereinafter called `bodily injury', sustained by the insured, and arising out of the ownership, maintenance or use of such underinsured automobile, provided, for the purposes of this endorsement, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by the agreement between the insured or such representative and the Company."
 {¶ 16} The term "insured," as the word is used in the above cited coverage provision, is defined as:
"(1) the first named insured as stated in the policy if an individual and not a corporation, firm or partnership, and while residents of the same household, the spouse of any such first named insured and, if not owning any automobile, the relatives of either;
"(2) any person while occupying an insured automobile; and
"(3) any person, with respect to damages he is entitled to recover for care or loss of services because of bodily injury to which this endorsement applies.
 {¶ 17} The trial court found that the definition of "insured" was ambiguous and applied Scott-Pontzer. This Court, however, finds no such ambiguity and we must therefore look to the plain meaning of the words. Appellee, in his motion for summary judgment, argued that only the second provision of the above cited definition of "insured" applied to the decedent. Therefore, this Court must determine if the decedent was entitled to UIM benefits because he was "occupying an insured automobile" at the time of the accident. An "insured automobile" is defined as:
"* * * [A] motor vehicle to which Bodily Injury Liability Coverage of the policy applies, provided such motor vehicle is:
"(1) a motor vehicle which is owned by the insured named in the Declarations of the policy, and, if the named insured is an individual, a motor vehicle owned jointly by the named insured and spouse;
"* * *
"(3) a motor vehicle while being operated by the named insured, or by his spouse if a resident of the same household.
"The term `insured automobile' shall not include:
"(a) a motor vehicle while used as a public livery conveyance;
"(b) under subparagraphs (1) and (2) above, a motor vehicle unless being used by or with the permission of the named insured or such spouse; or
"(c) under subparagraphs (2) and (3) above, a motor vehicle owned by or furnished for the regular use of the named insured or any resident of the same household."
 {¶ 18} Pursuant to the above definition of "insured automobile," for there to be coverage a vehicle owned by the "named insured" must be used with the permission of the named insured. The policy further provides that an "insured automobile" which is being operated by the "named insured" must not be an automobile that is "owned by or furnished for the regular use of the named insured or any resident of the same household." Under the unambiguous terms of the policy, the decedent is only entitled to UIM coverage as driver of an "insured automobile" if: (1) the motor vehicle is owned by MASI and used with the permission of MASI; or (2) the motor vehicle is operated by MASI and said vehicle was not furnished for the regular use of MASI. After reviewing the record, this Court finds that the motorcycle the decedent was driving at the time of the accident was owned by MASI and therefore this Court need only decide whether the decedent had permission to drive the motorcycle at the time of the accident. In reaching this determination, this Court must rely on the depositions of both Appellee and the passenger, Mrs. Annette Knight.
 {¶ 19} Appellee, in his deposition, stated that he was "like the vice president" of [MASI] and that "Robert Mills and [Appellee's] wife are the corporation, and [Robert Mills is] the president and [Appellee's wife] would be secretary/treasurer." At the time of the accident, Appellee's wife, Christie Richardson, owned 49 percent of the stock in the company and Robert Mills owned 51 percent of the stock; Appellee explained that he later bought Mr. Mills' stock in the corporation. When asked if the decedent "was an employee or had any type of business relationship with [MASI,]" Appellee replied: "I know he was not an employee. * * * [MASI] never had any employees for the whole time it was open. [Robert Mills] and my wife or myself kind of handled things, you know. It's just how that all went." Appellee also stated that the decedent was not a part-owner of the corporation. Appellee explained that the decedent simply performed odd jobs for Appellee in connection with MASI, and any money the decedent received for performing those jobs came from Appellee's own pockets. The decedent was usually paid in cash.
 {¶ 20} Appellee stated that on the day of the accident, he and the decedent were returning from Columbus, Ohio, after conducting business on behalf of MASI; the pair had purchased vehicles at an auction in Columbus. Appellee testified that he told the decedent to perform certain errands for him after the decedent returned to Akron. The decedent was "to go to the title bureau to see if there were any titles there and also to pick up supplies for [Appellee] which are the odometer statements, power of attorneys, things you could get at the title bureau that [Appellee] needed at the lot, paperwork, and to Starr Chevrolet[.]" Appellee explained that the decedent was driving an automobile, specifically a motorcycle, owned by MASI.[2]
When Appellee was asked "how much of the time
[the decedent drove] that bike and how much of the time it was on the lot at [MASI,]" the following discussion took place:
"[Appellee:] [The decedent] used [the motorcycle] to do things for me. He also used cars to do things for me so the bike was there. I can't break up the time. I mean, it wasn't that — to run errands, I guess that would have to be it. I mean, [the decedent] might have done other things I wasn't aware of, but that would be the reason for him using the motorcycle or a car.
"[Appellant's counsel:] [The motorcycle] was titled to [MASI]?
"[Appellee:] Right.
"[Appellant's counsel:] Are you ever aware of [the decedent] taking a car or motorcycle titled in [MASI's] name and just taking it home at night and using it for his personal use?
"[Appellee:] Am I aware of him using if for his personal use? I would guess that he probably did not without calling me up and saying Hey, can I use this car. If he was doing something and got done, he might have taken the car home instead of parking it — the business and his home are three blocks apart so he very well might have taken the vehicle home instead of back to the property because they're very close together.
"[Appellant's counsel:] Okay. Do you know if [the decedent] had permission to take the cars or the motorcycles titled under [MASI's] name purely for personal reasons that —
"[Appellee:] No, he did not.
"[Appellant's counsel:] Not before or after an errand that he was running did he have permission to just come and grab a car, motorcycle whenever he wanted and take it for his own personal use?
"[Appellee:] No, he did not."
 {¶ 21} Appellee further stated that when the decedent was involved in the accident, a passenger was also present. The passenger, Mrs. Annette Knight, informed Appellee that she and the decedent were on their way to Kmart. Based on this information, Appellee explained that "[if the decedent] ever did anything for [him] as far as running errands for MASI, it was [Appellee's] understanding that — that [Mrs. Knight] shouldn't have been with [the decedent] because he would have been conducting business at that time[.]" Appellee further stated that when he collected the decedent's personal effects after the accident he did not find any auto titles or other supplies or forms that Appellee had ordered the decedent to retrieve.
 {¶ 22} Appellee's testimony that the decedent only had permission to use the motorcycle for business related errands was in conflict with Mrs. Knight's deposition testimony. Mrs. Knight's testimony indicated that at the time of the accident the decedent was not working for Appellee. Mrs. Knight stated that on June 19, 2001, the day of the accident, she and the decedent went shopping to Walgreens and Kmart to purchase a gift for the decedent's unborn grandchild. Mrs. Knight said that the decedent never told her that he also planned to go to the title bureau. She explained that the decedent was finished with work at approximately 12:00 p.m. that day and that he picked her up at approximately 3:15 p.m. on his motorcycle. She explained that "[the decedent] didn't have to work. He worked whenever he wanted to." The car dealership, she explained, was "[the decedent's] and his brother's business[.]" Mrs. Knight stated that the decedent "went to Columbus with [Appellee] every morning and bought cars and sold them back to car dealers."
 {¶ 23} Mrs. Knight testified that she believed the motorcycle on which they were riding on the day the accident belonged to the decedent. She stated that she was present when the decedent allegedly purchased the motorcycle. Mrs. Knight further stated that the decedent used the motorcycle as daily transportation. Mrs. Knight explained that the decedent would use the motorcycle when he was working and when he wasn't working. She stated that "[w]hen [the decedent] was working he rode in the truck with [Appellee], but then after work [the motorcycle] was the main source of vehicle that he used, unless it was raining, then he drove the Cadillac." According to Mrs. Knight, Appellant was aware that the decedent used the motorcycle for personal errands. The following exchange took place during Mrs. Knight's deposition:
"[Appellant's counsel:] Did you ever ask [Appellee] for permission to ride the bike?
"[Mrs. Knight:] No.
"[Appellant's counsel:] Do you know if [Appellee] knew whether you were riding the bike?
"[Mrs. Knight:] Yes.
"[Appellant's counsel:] [Appellee] did know?
"[Mrs. Knight:] Yes. We would go on vacations together.
"[Appellant's counsel:] Who would go on vacations?
"[Mrs. Knight:] Me and [the decedent] and [Appellee]. [Appellee] would take his Harley and we would take [the decedent's motorcycle]."
 {¶ 24} Based upon Appellee's deposition testimony, the decedent was not an employee at the time of the accident and he was only permitted to use the motorcycle for errands done on behalf of Appellee.[3] Appellee's deposition testimony and Mrs. Knight's deposition testimony further indicate that at the time of the accident the decedent was on a personal errand If this Court takes Appellee's testimony as true, the decedent would not have had permission to use the motorcycle at the time of the accident because he was on a personal errand and he would therefore be barred from UIM coverage under Appellant's policy.[4] If, however, this Court were to find Mrs. Knight's deposition testimony more credible than Appellee's testimony, we would have to conclude that the decedent was allowed to use the motorcycle for both personal and business matters. In accordance with Mrs. Knight's version of the facts, the decedent, although clearly on a personal errand at the time of the accident, would be entitled to UIM benefits because he had broad "permission" to use the motorcycle, which would include use of the vehicle for both personal and business matters.
 {¶ 25} This Court notes that "[s]ummary judgment precludes a jury's consideration of a case and should, therefore, be used sparingly, only when reasonable minds can come to but one conclusion." Shaw v. Central Oil Asphalt Corp. (1981),5 Ohio App.3d 42, 44. Moreover, "whenever there exists a conflict of factual and legal issues, a motion for summary judgment is an improper method of disposing of the case." Thompson v. New YorkLife Ins. Co. (Dec. 4, 1989), 2nd Dist. No. 11416, 1989 Ohio App. LEXIS 4554, at *11. Because the deposition testimony of Appellee and Mrs. Knight are inconsistent with regard to whether the decedent had permission to use the motorcycle at the time of the accident, we cannot say that reasonable minds, reviewing the evidence before the trial court, would reach but one conclusion, that conclusion being adverse to Appellant. This Court therefore finds that a genuine issue of material fact exists and summary judgment was improper. Consequently, we find merit in Appellant's third assignment of error.
 Assignment of Error Number Six
"The trial court erred in determining as a matter of law that * * * victoria herhold was the sole proximate cause of the subject collision."
 {¶ 26} In Appellant's sixth assignment of error, it has argued that the trial court erred in finding that Mrs. Herhold was the sole proximate cause of the subject collision. Specifically, Appellant has argued that the trial court erred in relying on a police report that was not attached to Appellee's original motion for summary judgment or any subsequent pleading. This Court disagrees.
 {¶ 27} In reviewing Appellant's arguments, we are mindful that to prevail on a motion for summary judgment, the moving party must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.Dresher, 75 Ohio St.3d at 293. In the case sub judice, Appellant has argued that there was conflicting evidence regarding the comparative fault of the parties involved in an accident and, as such, the trial court erred in granting summary judgment in favor of Appellee on the issue of negligence. Appellee, on the other hand, has argued that "[t]he uncontroverted evidence established clearly and beyond a reasonable doubt that Mrs. Herhold's gross negligence was the sole proximate cause of [the decedent's] death." We find merit in Appellee's arguments.
 {¶ 28} The Ohio Supreme Court has held that "where reasonable minds could differ as to whose acts or omissions constitute the proximate cause of the accident, such determination is better left for the jury." Merchant Mut. Ins. Co. v. Baker (1984),15 Ohio St.3d 316, 318. However, the facts present in this case could not lead reasonable minds to differ upon the proximate cause of the decedent's death. The evidence is uncontroverted that Mrs. Herhold was driving while under the influence of alcohol at the time of the accident and that she ran a red light. In his affidavit, Appellee averred that the decedent "was killed when Victoria Herhold ran a red light. Ms. Herhold had a blood alcohol content of .251 * * *." Appellee's affidavit testimony was corroborated by an attached crash report. The crash report, which was also considered by the trial court, stated that Mrs. Herhold ran a red light and struck the decedent's vehicle. The report also stated that Mrs. Herhold was found to have .261 grams of alcohol per 210 liters of breath. This Court finds that although Mrs. Knight testified that the decedent failed to look both ways before attempting to enter into the intersection on a green light and that she screamed at the decedent to stop the motorcycle as he entered the intersection, such testimony does not present an evidentiary conflict that would defeat a motion for summary judgment with regard to the issue of liability. The record is clear that Mrs. Herhold was the proximate cause of the decedent's death.
 {¶ 29} With respect to Appellant's arguments that the trial court erred in relying on the crash report because "a police report is not one of the articles of evidence specifically authorized by [Civ.R. 56(C)] to support a motion for summary judgment[,]" we note that Appellant never objected to the use of the police report. "If a document is not of the type enumerated in Civ.R. 56(C), a trial court may consider that document when ruling on a motion for summary judgment if there is no objection. However, it is well within the trial court's discretion to ignore these documents." Trimble-Weber v. Weber (1997),119 Ohio App.3d 402, 406. Because Appellant failed to object to the police report, the trial court could properly consider the contents of the police report. Consequently, we find Appellant's sixth assignment of error lacks merit.
 Assignment of Error Number One
"The trial court erred in granting appellee's motion for summary judgment by applying the holding of scott-pontzer as the decedent was not an employee of the named insured corporation."
 Assignment of Error Number Two
"The trial court erred in granting appellee's motion for summary judgment by applying the holding of scott-pontzer, as the definition of `who is an insured' in the subject policy does not include the term `you' in reference to the named insured corporation which has found ambiguous by the court in scott-pontzer."
 Assignment of Error Number Four
"The trial court erred in granting appellee's motion for summary judgment by applying scott-pontzer as the subject policy contains two individuals as named insureds."
 Assignment of Error Number Five
"The trial court erred in granting appellee's motion for summary judgment where appellee provided the trial court with conflicting information through affidavit and deposition as to material facts."
 {¶ 30} In light of our disposition of Appellant's third assignment of error, we decline to address Appellant's first, second, fourth, and fifth assignments of error. See App.R. 12(A)(1)(c).
 III {¶ 31} Appellant's third assignment of error is sustained and its sixth assignment of error is overruled. We decline to address its first, second, fourth, and fifth assignments of error. The judgment of the trial court is reversed and the matter remanded for proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
Carr, P.J., and Batchelder, J., concur.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Exceptions.
[1] The January 29, 2003 order granting summary judgment in favor of Appellee only on the issue of liability was not a final and appealable order. See State ex rel. White v. Cuyahoga Metro.Hous. Auth (1997), 79 Ohio St.3d 543, 426 (holding that "orders determining liability in the plaintiffs' * * * favor and deferring the issue of damages are not final appealable orders under R.C. 2505.02 because they do not determine the action orprevent a judgment." (Emphasis sic.).
[2] Appellee in his affidavit also attested that "[a]t the time of his death, James P. Richardson was operating a motor vehicle owned by Modern Auto Sales, Inc."
[3] This Court notes that neither party has argued that Appellee did not have the authority to give the decedent permission to use the motorcycle for personal or business matters.
[4] The "permission" required for this Court to find that an automobile is insured for purposes of UIM coverage has not been qualified pursuant to the terms of the policy. In other words, the policy does not provide that a person is entitled to UIM coverage only if he is permitted to use a vehicle owned by Modern Auto Sales for business related purposes. Rather, the terms of the policy indicate that a driver may be permitted to use a vehicle owned by MASI for any reason. This is not to say, however, that the person with the authority to permit a driver to use a vehicle owned by MASI does not also have the right to narrow or broaden the scope of permission to include permission to use a vehicle for personal and/or business matters.