OPINION
{¶ 1} Plaintiff-appellant, Medical Protective Company ("MPC"), appeals from a judgment of the Franklin County Court of Common Pleas finding it liable to pay prejudgment interest in excess of its policy limits. MPC assigns a single error:
Assignment of error #1:
The trial court erred in denying Plaintiff-Appellant medical protective's motion for summary judgment and in granting Defendant-Appellees Karin Watson, Kenneth Cahill, M.D., and Ophthalmic Surgeons and Consultants of Ohio, Inc.'s motion for summary judgment.
Because the trial court properly determined MPC was responsible for paying the award of prejudgment interest, we affirm.
 {¶ 2} On February 22, 2002, a jury found defendants-appellees, Dr. Kenneth Cahill and his corporation, Ophthalmic Surgeons of Ohio, Inc. ("OSO"), negligent in the medical treatment of defendant-appellee, Karin M. Watson. Following deductions for Watson's comparative fault, the jury's award of $5.65 million for Watson's nearly total loss of vision in her left eye and significant vision loss in her right eye was in excess of the $4 million in medical malpractice insurance covering Dr. Cahill and OSO pursuant to two medical malpractice policies MPC issued to them.
 {¶ 3} The trial court subsequently awarded Watson prejudgment interest based on MPC's failure to make a good-faith effort to settle the case. MPC refused to pay any prejudgment interest, but instead filed a declaratory judgment action, seeking a declaration that since it paid its policy limits of $4 million, it was not liable for any prejudgment interest. On cross-motions for summary judgment, the trial court found in favor of Watson, Dr. Cahill, and OSO and ordered MPC to pay the prejudgment interest award.
 {¶ 4} In its single assignment of error, MPC contends the trial court erred in declaring MPC responsible for payment of the prejudgment interest award when its policies unambiguously provide that its limit of liability under the two policies is $4 million, including any prejudgment interest.
 {¶ 5} Appellate review of a granted summary judgment motion is de novo. Helton v. Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158,162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. MPC's appeal presents no factual disputes, but only issues of law.
 {¶ 6} The common law right to prejudgment interest is well recognized in Ohio. Miller v. Gunckle, 96 Ohio St.3d 359, 2002-Ohio-4932, at ¶ 28. The policy behind awarding prejudgment interest is to "encourage prompt settlement of claims, prevent prolonged litigation, and to compensate and make the injured party whole." Id. The possibility of such an award further is meant to "prevent parties who have engaged in tortious conduct from frivolously delaying the ultimate resolution of cases, and to encourage good faith efforts to settle controversies outside a trial setting." Kalain v. Smith (1986), 25 Ohio St.3d 157, 159; Miller v.Leesburg (Dec. 1, 1998), Franklin App. No. 97APE10-1379.
 {¶ 7} R.C. 1343.03(C) provides for prejudgment interest, specifying that if "the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case, interest on the judgment, decree, or order shall be computed" as set forth in the statute.
 {¶ 8} Here, the trial court awarded prejudgment interest to Watson, a decision not appealed. Instead, the sole question in this appeal is whether MPC is liable to pay prejudgment interest, even though its policies provide that MPC is liable for prejudgment interest only if the prejudgment interest award, in combination with the damages award, does not exceed the limits of liability set forth in MPC's policies. MPC reasons that under contract law an insurance policy can exclude payment of anything in excess of the policies' limits of liability. In support of its overall contentions, MPC relies heavily on Lovewell v. PhysiciansIns. Co. (1997), 79 Ohio St.3d 143.
 {¶ 9} In Lovewell, a patient brought a medical malpractice action against a physician and insurer seeking payment of not only damages, but also prejudgment interest pursuant to R.C. 1343.03(C). The liability insurance contract at issue provided coverage for damages a physician was obligated to pay because of a "medical incident." The insured physician in Lovewell refused to sign a consent form to settle the case, and the resulting question was whether "a medical malpractice insurer can be held liable for an award of prejudgment interest when its insured, acting pursuant to a contract right, withholds consent to any settlement offer by the insurer." Lovewell, at 144.
 {¶ 10} Lovewell acknowledged that generally, in the absence of a statutory mandate or contractual agreement, the liability for prejudgment interest falls to the named party in the litigation. Id. at 145, citingPeyko v. Frederick (1986), 25 Ohio St.3d 164 (noting that a defendant is ultimately responsible for payment of prejudgment interest, but that defendant's insurer may be liable if the insurer's conduct was the basis for an award). The court further observed "that the construction of contracts is a matter of law to be resolved by the court." Id. As the court explained, if the terms of the contract are unambiguous, the court is bound by them and may not expand its language to include coverage that was clearly not intended by either party. Id. at 147.
 {¶ 11} Applying those rules, the court in Lovewell ultimately held that because the insurance policy did not expressly provide for paying prejudgment interest, the insurer was not liable for prejudgment interest awarded because of the insured physician's refusal to consent to settlement. Lovewell, at 147. Explaining, the court stated that "[t]he proper inquiry, then, is * * * which party is responsible for the failure of good faith. In the absence of a finding by the trial court that the insurer was the party responsible for the failure to exercise good faith, we cannot imply a contractual term that does not exist in order to shift liability to the insurer." Id. at 148. Accordingly, even though nothing in Lovewell suggests the award, with interest, was outside the policy's liability limits, the court declined to saddle the insurer with the insured's refusal to settle in good faith.
 {¶ 12} Appellees respond by relying on Gunckle. In Gunckle, the insureds brought an action against an automobile insurer to recover uninsured motorist ("UM") benefits. One of the issues specifically addressed was whether the insurer was liable for prejudgment interest pursuant to R.C. 1343.03(C), when the interest award, combined with the damage award, exceeded the insured's policy limits. Id. In resolving the issue, the court discussed the strong policy behind an award of prejudgment interest and held that an "insurer is liable for an entire award up to the insured's policy limit plus any prejudgment interest awarded on that policy limit." Id. at ¶ 31.
 {¶ 13} Explaining its decision, the court stated that "[i]f we were to adopt [the insurer's] position it would frustrate the policy of encouraging settlement, since there would be little incentive for an insurer to settle a meritorious claim. The insurer in such a situation, knowing that its loss is confined to the insured's policy limit, has less incentive to prevent protracted litigation in which the insured is deprived of the use of the money. Once a lengthy litigation process is complete, the insured is not compensated for the lapse of time between the accrual of the claim and judgment. The insurer would clearly have the benefit of retaining control over, and earning interest on, money due and payable to their insured. * * * [S]uch a result would clearly contradict the well-established statutory and common-law basis for prejudgment interest." Id. at ¶ 29.
 {¶ 14} While we recognize that factual differences distinguish bothLovewell and Gunckle from the case before us, Gunckle is the more persuasive under the facts presented here. Initially, contrary to MPC's suggestion, we see no reason to limit Gunckle's holding to UM cases. The policy behind an award of prejudgment interest is premised on a lack of good-faith efforts to resolve the case short of trial, an issue that arises in both medical malpractice and UM cases.
 {¶ 15} Although MPC also suggests that the policy underlying an award of prejudgment interest can be vindicated through the insured's ability to sue its insurer for bad faith, this case belies MPC's contentions. Here, the trial court awarded prejudgment interest because of MPC's lack of good faith, but at the same time concluded MPC did not act in bad faith. As a result, under the scenario MPC posits, Dr. Cahill and OSO would be left with no remedy against MPC, despite MPC's lack of good faith in refusing to settle Watson's claims and their own willingness to settle the matter.
 {¶ 16} MPC nonetheless points out that, unlike Gunckle, the policies at issue here contain language that limits MPC's liability to $4 million, including any prejudgment interest. Relying on that language, MPC asserts that Gunckle cannot dispose of the issue before us. Because neither Lovewell nor Gunckle is factually identical to MPC's policy language, we are required to apply the rationale of those cases in resolving MPC's contentions.
 {¶ 17} To that end, the pertinent question in prejudgment interest cases, as recognized in Lovewell, is "which party is responsible for the failure of good faith." Lovewell, at 148. Relying on the public policy that supports the statutory award of prejudgment interest in Ohio, the Ohio Supreme Court similarly determined in Gunckle that if the insurer fails to exercise good faith, it must pay prejudgment interest over the policy limit. Indeed, the common thread in both Lovewell and Gunckle is the Supreme Court's determination that the party responsible for the failure of good faith is responsible for payment of the prejudgment interest award. To hold otherwise would reward the wrongly recalcitrant and punish the other despite its appropriate willingness to settle the matter short of trial.
 {¶ 18} Similarly, enforcement in this case of MPC's limits of liability provisions would violate the public policy that supports the award of prejudgment interest. Dr. Cahill and OSO specifically authorized MPC to settle the case, but in response to Watson's good-faith offers, MPC's adjuster "failed to make a good faith monetary settlement offer or respond in good faith to numerous demands from Plaintiff." (Watson Motion for Summary Judgment Ex. A, 30.) To enforce the policy language would allow MPC to refuse to settle a case that properly should be settled, knowing that its actions not only gained for it the interest accruing during the duration of the litigation, but also exposed it to no risk because its insurance policies shifted the responsibility for its lack of good faith to its insureds.
 {¶ 19} Because, on these facts, enforcement of MPC's policy language leads to a result that directly contravenes the policy set forth inGunckle, the language of the policies limiting MPC's liability to $4 million, including prejudgment interest, is unenforceable as against public policy. See, e.g., Berrios v. State Farm Ins. Co., 98 Ohio St.3d 109,2002-Ohio-7115 (holding that a contractual term allowing for a deduction of medical payments paid under another clause violated the public policy underlying the statute providing for uninsured and underinsured coverage and thus was unenforceable). MPC cannot avoid the consequences of its own behavior by inserting language into its insurance policies that flouts the public policy underlying the award of prejudgment interest. Applying the rationale of both Lovewell and Gunckle to the facts of this case, we conclude, as did the trial court, that MPC properly must pay the prejudgment interest awarded in Watson's action against Dr. Cahill and OSO.
 {¶ 20} For the foregoing reasons, MPC's single assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
Sadler and Deshler, JJ., concur.
Deshler, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.