**BREZOVAR, Appellant,**

v.

**AMERICAN FAMILY INSURANCE COMPANY, Appellee.**

[Cite as *Brezovar v. Am. Family Ins. Co.*, 181 Ohio App.3d 780, 2009-Ohio-1710.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 08CA0084–M.

Decided April 13, 2009.

Timothy D. McKinzie and Kerry G. MacKenzie, for appellant.

Donald P. Wiley and Melissa Day, for appellee.

---

WHITMORE, Judge.

{¶ 1} Plaintiff-appellant, Patricia Brezovar, appeals from the judgment of the Medina County Court of Common Pleas, granting summary judgment to defendant-appellee, American Family Insurance Company ("American Family"). This court affirms.

## I

{¶ 2} In September 2006, Brezovar and another driver, Troy Webster, were involved in a car accident. Both drivers were insured by American Family. In

September 2006, Brezovar filed a claim with American Family under the medical-expenses provision of her own policy. American Family issued Brezovar a $2,000 check, which represented the medical-expense limit on her policy. American Family then settled Brezovar's claim against Webster for $15,000, an amount within Webster's policy limits. After settling the claim, American Family issued Brezovar a check for $13,000 and placed the remaining $2,000 in an escrow account. Brezovar accepted the check and signed a release, indicating that $15,000 represented the full recovery on the claim, but:

> The [$15,000] amount includes a lien of $2000 due American Family to satisfy a Medical Expense payment to [ ] Brezovar on Claim 00–381–241462.[ ] Brezovar will pay her own existing medical bills.

Despite signing the foregoing release, Brezovar believed that she was entitled to the $2,000 in the escrow account. According to Brezovar, the fact that she paid separate premiums for liability, medical expenses, and uninsured/underinsured motorist ("UM/UIM") coverage on her insurance policy entitled her to both the $2,000 payment for medical expenses under her own policy and the $15,000 settlement from Webster's policy, for a total payout of $17,000. American Family disagreed and sought to retain the $2,000 in escrow pursuant to the subrogation clause in its policy with Brezovar.

{¶ 3} On March 7, 2008, Brezovar filed a breach-of-contract and declaratory-judgment action against American Family. Brezovar argued that she was entitled to $15,000, the full settlement amount from the accident, and was not responsible for reimbursing American Family for the $2,000 it paid to her under the medical-expenses provision of her own policy. On August 4, 2008, American Family filed a motion for summary judgment, arguing its legal entitlement to a subrogation claim against Brezovar for $2,000. Brezovar responded in opposition and filed her own motion for summary judgment on September 2, 2008. The trial court held a hearing on the motions on October 10, 2008. On October 20, 2008, the trial court granted summary judgment in favor of American Family, finding that American Family "is subrogated to the extent of the $2,000.00 for medical expenses paid to [Brezovar]."

{¶ 4} Brezovar now appeals from the trial court's judgment and raises one assignment of error for our review.

## II

### Assignment of Error

The trial court erred by granting summary judgment to the insurer where Ohio law dictates when an insured has paid a premium for additional insurance coverage the insured is entitled to the benefit of her bargain; specifically,

where the insured has paid an additional premium for uninsured/underinsured motorist and medical expense coverage the insurer is not subrogated for amounts paid to its insured under the medical expense coverage.

{¶ 5} In her sole assignment of error, Brezovar argues that the trial court erred in granting American Family's motion for summary judgment. Specifically, she argues that an insurance company may not deduct an insured's medical expenses from a settlement when the insured pays additional premiums for medical-expense coverage and UM/UIM coverage. We disagree.

{¶ 6} This court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 12, 13 OBR 8, 467 N.E.2d 1378.

{¶ 7} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the nonmoving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293, 662 N.E.2d 264. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735, 600 N.E.2d 791.

{¶ 8} In its motion for summary judgment, American Family argued that it was entitled to the $2,000 it placed in escrow from Brezovar's settlement based on (1) the language set forth in the subrogation clause of her policy, (2) relevant case law, and (3) the release that she signed when she accepted payment. While American Family properly incorporated Brezovar's policy by reference through a properly framed affidavit, it failed to incorporate the copy of the

release that Brezovar signed in the same manner. Civ.R. 56 limits the types of materials that a court may consider in ruling on a motion for summary judgment to those enumerated in Civ.R. 56(C) and those incorporated by reference through a properly framed affidavit. *Rutkai v. Freeland,* 9th Dist. No. 24267, 2008-Ohio-6440, 2008 WL 5159030, at ¶ 7; Civ.R. 56(E). This court has held that a trial court has discretion whether or not to consider improper Civ.R. 56(C) evidence. *Richardson v. Auto–Owners Mut. Ins. Co.,* 9th Dist. No. 21697, 2004-Ohio-1878, 2004 WL 785461, at ¶ 29. Here, the trial court specifically noted in its order that it was entering summary judgment "[u]pon review of the evidence submitted by the parties pursuant to Civil Rule 56(C)." Moreover, while the trial court referred to Brezovar's insurance policy in its order, it did not refer to the release that she signed. Thus, we will not consider the copy of the release that Brezovar signed in reviewing the summary-judgment award on appeal. We only consider Brezovar's policy and the applicable case law.

{¶ 9} Brezovar's policy entitled her to UM/UIM coverage and to medical-expense coverage based on an additional premium that she had paid. Brezovar's policy also entitled American Family to a right to subrogation in the event that American Family paid out damages under the policy and Brezovar also collected funds from another source. The subrogation clause in the policy provided as follows:

When we pay damages under this policy to a person who also collects from another, the amount collected from the other shall be repaid to us to the extent of our payment. This provision does not apply in Ohio for Part III, Uninsured Motorist Coverage.

Both parties agree that Brezovar never had to file a UM/UIM claim under her own insurance policy because American Family settled her claim within the limits of the policy owned by Webster, the motorist with whom she had a car accident. It is also undisputed that American Family settled Brezovar's claim against Webster for $15,000.

{¶ 10} American Family acknowledges that it would not have been permitted to subrogate a claim against Brezovar for medical payments if she had needed to rely upon her own UM/UIM coverage to fully recover. Because Brezovar was able to be fully compensated without having to resort to UM/UIM coverage, however, American Family argues that it was entitled to a subrogation claim against her for the $2,000 it paid to her for her medical expenses. Brezovar argues that under *Berrios v. State Farm Ins. Co.,* 98 Ohio St.3d 109, 2002-Ohio-7115, 781 N.E.2d 149, an insurer may not use a subrogation clause to seek reimbursement from its insured on amounts paid pursuant to the insured's medical-expenses coverage. The trial court agreed with American Family and determined that *Berrios* only applies in UM/UIM coverage cases.

{¶ 11} In *Berrios*, the Ohio Supreme Court held that an insurer could not seek reimbursement of medical payments from the proceeds of its insured's settlement when a portion of that settlement came from the insured's own underinsured motorist ("UIM") coverage. *Berrios* at ¶ 40–44. Berrios's insurance company, State Farm, paid for Berrios's medical bills under the medical-payments provision of his policy before he settled his claim with the other driver in an automobile accident. After Berrios's claim against the other driver settled for the limit on that driver's policy, Berrios had to file a UIM claim with State Farm. Berrios and State Farm agreed to settle the UIM claim, but disagreed as to whether State Farm then could seek reimbursement for medical payments from the portion of Berrios's settlement that came from the other driver's policy. The Supreme Court held that State Farm could not seek reimbursement from Berrios for medical payments because State Farm was statutorily obligated to provide Berrios with UM/UIM coverage and because State Farm "treated UIM coverage separately from medical payments coverage by setting out separate conditions for payment under the contract and charging separate premiums." Id. at ¶ 34. The court specified that Berrios "must recover under both the medical payments and UIM coverage" because if the same insurance company insures an individual for both UIM and medical payments coverage, that insurance company may not upset the "special protection" of UM/UIM coverage by offsetting that coverage using another provision in the insured's policy. Id. at ¶ 40–43.

{¶ 12} Unlike Berrios, Brezovar did not have to resort to her own insurance policy to pay both her medical expenses and a portion of her underlying claim. After it paid Brezovar $2,000 for medical expenses under her own policy, American Family was able to settle her claim against Webster for $15,000, an amount within his policy limits. Brezovar did not have to seek additional UIM coverage from American Family. Accordingly, this is not a case of an insurance company demanding reimbursement after paying out under two different provisions of the same policy. Compare id. American Family's policy with Brezovar provided that American Family was entitled to repayment for any amount paid out "under th[e] policy to a person who also collects from another." Brezovar received payment from American Family and also collected from Webster. While American Family's subrogation clause specifically provided that American Family could not seek reimbursement in cases of payouts made pursuant to UIM coverage, the clause did not exempt payouts made pursuant to the insured's medical-expenses coverage. Accordingly, the terms of Brezovar's policy entitled American Family to seek reimbursement. The trial court correctly concluded that American Family was entitled to $2,000 for the medical-expenses payment it made to Brezovar before settling her claim.

{¶ 13} The record reflects that American Family placed $2,000 of Brezovar's $15,000 in an escrow account pending the resolution of this matter. Based on the foregoing, American Family is entitled to retain the $2,000 it placed in escrow. Once American Family does so, Brezovar is released from her obligation to reimburse American Family for the money it paid to her under the medical-expenses provision of her policy. Brezovar's assignment of error is overruled.

### III

{¶ 14} Brezovar's sole assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

CARR, P.J., concurs.

BELFANCE, J., dissents.

BELFANCE, Judge, dissenting.

{¶ 15} In *Berrios v. State Farm Ins. Co.*, 98 Ohio St.3d 109, 2002-Ohio-7115, 781 N.E.2d 149, the court determined that the insurer could not enforce a subrogation clause because the subrogation clause was in derogation of the policy and purpose of the statute providing for UM/UIM coverage. *Berrios* at ¶ 29, quoting *Grange Mut. Cas. Co. v. Lindsey* (1986), 22 Ohio St.3d 153, 155, 22 OBR 228, 489 N.E.2d 281. Thus, the holding of *Berrios* is applicable to those cases that fall within the "separate world of UM/UIM coverage." *Berrios* at ¶ 43.

{¶ 16} However, in the instant matter, we do not consider a case that involves UM/UIM coverage; thus, *Berrios* is distinguishable from this case. Brezovar has argued that in light of *Berrios*, Ohio law does not allow a subrogation clause to dilute coverage for medical expenses that was separately contracted for and for which Brezovar paid a separate premium. However, it would be more correct to state that Brezovar's contention is supported not by virtue of the specific holding of *Berrios*, but rather, by the dicta in *Berrios*.

{¶ 17} The *Berrios* court stated:

In addition to the public-policy reasoning behind *Shearer* was a more practical issue-that people who pay separate premiums for separate coverages should get what they pay for: " '[A] policy provision which the insured considers to be additional protection and for which he pays a premium with such extra protection in mind cannot be transposed by the insurer into a reduction of the mandatory minimum coverage.' "

*Berrios* at ¶ 26, quoting *Shearer v. Motorists Mut. Ins. Co.* (1978), 53 Ohio St.2d 1, 8, 7 O.O.3d 1, 371 N.E.2d 210, quoting *Bacchus v. Farmers Ins. Group Exchange* (1970), 106 Ariz. 280, 282–83, 475 P.2d 264.

{¶ 18} Likewise, in *Shearer*, the court also stated:

"The medical payment coverage part of the policy is independent of the uninsured motorist coverage and should be treated the same as if it were carried with a different company."

*Shearer,* 53 Ohio St.2d at 7, 7 O.O.3d 1, 371 N.E.2d 210, quoting *Bacchus,* 106 Ariz. at 282–283, 475 P.2d 264.

{¶ 19} Thus, *Shearer* and *Berrios* are founded upon a central legal premise, namely, that the medical-payment coverage portion of the policy constitutes an independent policy for which the policy holder has paid an extra premium, and thus, the policyholder should be permitted to get the benefit of her bargain without any dilution. This makes sense since the policyholder has purchased a separate policy with an expectation that she will receive additional protection in a specific amount for medical expenses. *Berrios* at ¶ 26. To permit the insurer to retrieve sums it paid out from the funds the policyholder receives from the tortfeasor essentially undercuts the entire purpose of buying separate coverage and relieves the insurer of the fulfillment of its promise to pay under the policy. Here, Brezovar contracted for and expected to receive the benefit of a $2,000 medical-payment coverage policy, yet must now part with the additional protection she separately contracted for and paid for.

{¶ 20} In light of the above legal underpinnings of both *Berrios* and *Shearer,* it makes little sense to hold that a person may get the benefit of her bargain when she is struck by an uninsured or underinsured motorist, but she may not get the benefit of her bargain when she is struck by a motorist who is fully insured. Thus, I respectfully dissent.